Argued September 18, affirmed October 7, 1919.

# KAUFMAN *v.* HASTINGS.

(184 Pac. 265.)

**Exchange of Property—Time for Adjusting Commissions Identical With Period for Making Exchange.**

1. Contract for exchange of properties, though providing that it may be declared canceled if a satisfactory adjustment of the real estate agent's commission cannot be effected, not providing any time therefor, time for adjustment is identical with the period named for making the exchange.

**Specific Performance—There Being No Such Stipulation, Time is not Essence of Contract.**

2. Though contract for exchange of properties names a period within which conveyances shall be executed and exchanged, there being no stipulation that time is of the essence, it will not be considered so in action for specific performance; the parties having used diligence and acted in good faith, and there not being any change of circumstances affecting the equities.

**Mortgages—Trust Deed to Secure Debt Conveys Legal Title Only to Enforce Trust.**

3. Under the laws of California, a trust deed to secure a specified debt, amounts only to an encumbrance, and conveys the legal title to the trustee only in so far as may be necessary to the execution of the trust.

**Specific Performance—Contract of Married Man Relating to Realty Enforceable Against Him.**

4. Contract of a married man to sell real estate, though not joined in by his wife, may be specifically enforced against him.

[As to specific performance of husband's contract to convey realty when wife refuses to join, see notes in 14 Ann. Cas. 671; Ann. Cas. 1914A, 202; 24 L. R. A. 764.]

**Specific Performance—Of Exchange of Properties not Ineffective for Failure to Assign Insurance.**

5. Specific performance of contract for exchange of realty may not be complained of because of failure to assign insurance policies; the decree covering the matter, and it being necessary to validity of such assignment that the properties be first exchanged.

[As to specific performance of contract to exchange lands, see note in Ann. Cas. 1918D, 717.]

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

On November 6, 1916, the defendant was the owner of the lot known as No. 680 East Harrison Street in

the City of Portland, Oregon, and the plaintiff was the owner of a lot numbered 1608 Arch Street, in the City of Berkeley, California. After making an examination of each other's property they agreed to an exchange of the realty and executed a written contract by which the defendant agreed to assume an encumbrance of $5,000 on the Berkeley property, which was otherwise to be free and clear of any lien or charge. The plaintiff in turn was to assume an encumbrance of $4,000 on the Portland property and execute a second mortgage thereon of not to exceed $1,000, in favor of Hastings, payable on or before two years from date, with interest at 7 per cent per annum. Otherwise the Portland property was to be free and clear of lien, excepting a municipal bonded indebtedness not exceeding $200, the intention being to have the amount of the second mortgage cover the difference between the existing liens on the two properties.

The plaintiff alleges that about November 10, 1916, with Marie Kaufman, his wife, he made and executed a good and sufficient deed of conveyance of their property to the defendant under the terms of the contract; that on November 15th following, the deed was duly tendered; that on November 20th the Kaufmans duly executed a second mortgage on their Portland property in favor of the defendant for the sum of $1,000; that on November 27th the said mortgage covering the amount of the difference of the existing encumbrances upon the property to be exchanged, as provided in the written agreement, was tendered to the defendant; that the tenders have since remained and are now in force and effect; that the plaintiff has kept and performed all of the terms and conditions of the written contract by him to be kept and performed, and is ready, able and willing to carry out such agreement,

and that in violation thereof the defendant has failed, neglected and refused to carry out his part.

It is further alleged that prior to the time when the defendant repudiated his contract, it was understood and agreed that the broker would take and accept $400 in full for his services in effecting the exchange of properties, of which amount the plaintiff was to pay $200; that the real estate commission was then fully and finally settled and adjusted as provided in the contract, and that the writing is in full force and effect. The plaintiff prays for a decree of specific performance.

A demurrer to the complaint was filed, which was overruled by the court, and the defendant answered, admitting the execution of the written contract but denying all other material allegations. As an affirmative defense he alleges that on March 30, 1912, the plaintiff conveyed to the Berkeley Bank of Savings & Trust Company the identical property described in the complaint, and a copy of the deed is attached to and made a part of the answer as evidence that the plaintiff did not have and could not convey a valid title to the property. The answer further avers that A. L. Wiesenhaven acted as the agent and broker of the plaintiff in the transaction; that the defendant was to pay his commission and if the agent should demand more than $203 for his services and a satisfactory adjustment could not be made, the defendant had and reserved the right to cancel and annul the contract and refuse to carry it out; that the agent, claiming $900 as a reasonable fee for his services, proposed to the defendant to accept $600 in full payment and declined to take any less amount; that no adjustment of the agent's commission satisfactory to the defendant was or could be arranged; that inasmuch as the claim was

93 Or. —40

for $600 and the defendant was not willing to pay more than the stipulated amount, on November 20, 1916, he exercised his right under the terms of the contract to, and did, cancel and annul the same, refused and declined to carry it out and so notified the plaintiff.

A reply was filed denying all new matter in the answer. After the case was at issue the defendant filed a motion for judgment on the pleadings, which was overruled. Testimony was taken and the trial court rendered a decree of specific performance as prayed for in the complaint. The defendant appeals.

Affirmed.

For appellant there was a brief over the names of *Mr. Raymond L. Sullivan* and *Messrs. Emmons & Webster,* with an oral argument by *Mr. Sullivan.*

For respondent there was a brief with oral arguments by *Mr. C. L. Whealdon* and *Mr. Ralph R. Duniway.*

JOHNS, J.—The contract provides that "the deeds and other conveyances necessary to complete this transaction will be executed and exchanged within fifteen days from date," and that "in the event the real estate agent or agents demand a commission in excess of two hundred ($200.00) dollars, it is hereby mutually agreed that if a satisfactory adjustment of such commission cannot be effected, this agreement may be declared canceled and of no effect." Before the contract was executed a personal examination of the respective properties was made by each party. At that time the plaintiff, who was the owner of the Berkeley property, was a resident of Portland, Oregon, and Mrs. Kaufman, his wife, was then in Berkeley. The defendant, who owned the Portland property, was

then residing in Berkeley, where the broker Wiesen-haven had his place of business.

It is apparent that the agreement was entered into in good faith by both parties and that each of them was then ready and willing to make the exchange when the amount of the commission could be amicably determined. Steps were at once taken to agree upon the amount. The broker first demanded $900 for his services, which both parties refused to pay. After a conference he reduced his claim to $600 and after a further talk with the plaintiff's wife in his office he agreed to accept $400 in full for his services. Of this amount the plaintiff was to pay $200, leaving the remainder to be paid by the defendant under the terms of the contract. The broker assented to this and he and the plaintiff's wife called at the defendant's place of business and advised him of the arrangement. The broker testifies that this occurred about 3 o'clock in the afternoon of November 20th, and on that point he is corroborated by Mrs. Kaufman. It appears that on the same day, before that conversation, the defendant had notified the broker that the deal was off, but the latter testifies that he was not acting for or representing Hastings in the transaction. On that day, also, the defendant addressed a letter to the plaintiff at Portland, advising him that on account of failure to adjust a commission the deal was off. This letter was postmarked "San Francisco, November 20, 1916, 4 P. M." Assuming that the testimony of the broker is true, the letter was deposited in the postoffice one hour after the conversation between the defendant, the plaintiff's wife and the broker regarding the arrangement as to the commission.

It will be noted that the contract was dated November 6, 1916. On November 11th at Portland the

plaintiff executed and acknowledged his deed to the
Berkeley property and forwarded it to his wife with
instructions to sign and arrange for its delivery upon
the receipt of the defendant's deed to the Portland
property. The evidence is not clear as to when she
actually executed the deed, but Joseph L. MacFarland
testified that he was vice-president of the Alameda
County Home Builders and that in such capacity he
received the deed duly executed, on or about Novem-
ber 15, 1916, with instructions that it should be held in
escrow until a settlement was made between Mr. Kauf-
man and Mr. Hastings; that "when Mr. Hastings de-
livered his deed, the Kaufman deed was to be deliv-
ered to him," and that "I gave Mr. Hastings the deed
to read and he was evidently conversant with the con-
ditions." His evidence is corroborated by Arthur E.
Weed, the bookkeeper of that company, who testifies
that the tender was made "verbally, and about the
thirteenth to the seventeenth of November, 1916," and
that "Mr. Hastings was told that the papers were here
duly executed, ready for delivery to him." It further
appears that about November 25th the deed in ques-
tion was placed in the Berkeley Bank of Savings &
Trust Company with such instructions and that the
bank gave the defendant written notice thereof. It is
also shown that on November 20, 1916, in Portland the
plaintiff executed in favor of the defendant his promis-
'sory note for $959.73, in the usual form, payable on or
before two years after date, with interest, and that to
secure its payment he executed and acknowledged a
certain mortgage on his Portland property, which was
forwarded to his wife at Berkeley with proper instruc-
tions. Mrs. Kaufman duly executed the mortgage and
it was placed in the bank about November 25, 1916,
and two days later the bank notified the defendant of

its receipt and of the instructions. Since that time the bank has held the deed, note and mortgage subject to the defendant's order.

1, 2. While it is provided in the contract that "all deeds and conveyances necessary to complete this transaction will be executed and exchanged within fifteen days from date," there is no stipulation that time is of the essence of the contract. Neither is there any provision as to the time the agreement "may be declared canceled and of no effect" for the failure to make a "satisfactory adjustment of such commission." As we construe it, the time within which the commission was to be adjusted was not fixed by the contract, but would be identical with the period named by the terms and provisions, within which the exchange of properties should be made. In *Wright* v. *Astoria Co.*, 45 Or. 224, 228 (77 Pac. 599), it is said:

"There was no understanding or stipulation that the deed should not be delivered unless plaintiff paid the purchase price by a day certain. In equity the time of payment is not of the essence of a contract for the sale of real estate unless made so by express agreement of the parties, by the nature of the contract itself, or by the circumstances under which the contract was executed.

"Specific performance of a contract for the sale of real estate will ordinarily be decreed, even though the purchase money was not paid or tendered at the exact time fixed by the contract, when the party seeking the performance has acted in good faith, and with reasonable diligence, unless there has been such a change of circumstances affecting the equities of the parties or the justice of the contract as to make it inequitable that it should be enforced." (Citing authorities.)

In the instant case it appears that both parties used due diligence in trying to adjust the amount of the broker's commission; that on November 20, 1916, the

amount which the defendant was to pay was ascertained and determined within the terms of the contract; that the plaintiff acted in good faith in executing and tendering the deed, note and mortgage and that there has not been any such ''change of circumstances affecting the equities of the parties or the justice of the contract, as to make it inequitable that it should be enforced.''

The agreement provided that—

''In said exchange of properties the said Herman S. Hastings will assume an encumbrance on the Berkeley property of not to exceed five thousand ($5,000.00) dollars, said Berkeley property to be free and clear of all other encumbrances of whatsoever nature.''

There is no other provision as to the character or nature of plaintiff's title. It appears that on February 1, 1912, the plaintiff executed a trust deed of his property to the Berkeley Bank of Savings & Trust Company to secure a debt to Walter H. Ratcliff, Jr., of $5,438.94 with interest at 7 per cent per annum, to be paid in graduated installments which on and after February 1, 1914, were to be at the rate of $75 per month with accrued interest. The deed recited that the plaintiff did ''grant, bargain, sell, convey and confirm unto the party of the second part and unto its heirs and assigns all of that piece or parcel of land situate in the City of Berkeley, County of Alameda, State of California,'' as the same is described in the complaint, ''to have and to hold the same to the party of the second part, and to its heirs and assigns, (said party of the second part and its heirs or assigns being hereby expressly authorized to convey, subject to the trust herein expressed, the land above described) upon the trusts and confidences hereinafter expressed.''

3. The defendant insists that under the laws of California this trust deed was an absolute conveyance and that at the time of the execution of the contract the plaintiff did not have any title to his property to convey. He cites a number of California decisions to support his contention. While there may have been a conflict in the early decisions of that state, as to the force and effect of such a deed, we think that the question was fully and finally settled in the case of *MacLeod* v. *Moran,* 153 Cal. 97 (94 Pac. 604), where in commenting upon the precedents the opinion says:

"These decisions are based upon the fact that such a deed, though in form a grant, is really only a mortgage, and does not convey the fee. A trust deed of the kind here involved differs from such a deed only in that it conveys the legal title to the trustees so far as may be necessary to the execution of the trust. It carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt. The nature of such an instrument has been extensively discussed by this court, and the sum and substance of such discussion is that while the legal title passes thereunder, and the trustees cannot be held to hold a mere 'lien' on the property, it is practically and substantially only a mortgage with power of sale. * * The legal title is conveyed solely for the purpose of security, leaving in the trustor or his successors a legal estate in the property as against all persons except the trustees and those lawfully claiming under them: Civ. Code, §§ 865, 866. Except as to the trustees and those holding under them, the trustor or his successor is treated by our law as the holder of the legal title. * * The legal estate thus left in the trustor or his successors entitles them to the possession of the property until after their rights have been fully divested by a conveyance made by the trustees in the lawful execution of their trust, and entitled them to exercise all the ordinary incidents of ownership in re-

gard to the property, subject always, of course, to the execution of the trust.''

In the instant case the trust deed was executed to secure a specified existing debt. When that debt is discharged according to its terms the plaintiff or his successor in interest is *ipso facto* entitled to a reconveyance of his realty.

The testimony shows that at the time the exchange contract was executed the amount of that existing debt was less than $5,000 and that the plaintiff was not in default in any of his specified payments. According to the terms of the contract the defendant was to assume an encumbrance upon the plaintiff's property of not to exceed $5,000, and under the authority of *MacLeod* v. *Moran*, 153 Cal. 97 (94 Pac. 604), we hold that the trust deed which the plaintiff executed to the bank was an encumbrance. It is shown by the record that the amount did not exceed $5,000. By the payment of that sum the defendant would acquire title to the property free and clear of any charge, lien or encumbrance.

4. The exchange contract was not executed by the wife of either party and it is contended that—

''A contract for the sale of real estate in which the wife of the contractor is not joined cannot be specifically enforced.''

The plaintiff does not seek a specific performance of the contract as against the wife of the defendant, and it is shown that the plaintiff's wife has joined in the conveyance of his property to the defendant and in the execution of the mortgage.

5. Complaint is made of the failure to assign policies of insurance. Prior to the exchange of properties such assignments would be void. In any event they would be a matter of minor importance and are

now fully covered by the decree of the trial court. · No objection whatever was made to the form or substance of the deed, note and mortgage which were tendered.

From a careful examination of the record we are convinced that the plaintiff acted in good faith, used due diligence to carry out the exchange contract and is entitled to specific performance.   The decree of the Circuit Court is affirmed.                AFFIRMED.

BENSON, HARRIS and BENNETT, JJ., concur.