Submitted on record and briefs April 23,
affirmed August 11, 1980

# PATTERSON LUMBER COMPANY, INC.,
*Respondent,*
*v.*
## LEWIS, et al,
*Appellants.*

(No. 25,334, CA 15086)

615 P2d 372

Steven H. Corey, Peter H. Wells, and Corey, Byler & Rew, Pendleton, filed the brief for appellants.

Carl G. Helm, and Helm & Valentine, La Grande, filed the brief for respondents.

Before Gillette, Presiding Judge and Roberts and Campbell, Judges.

GILLETTE, P. J.

**GILLETTE, P. J.**

This proceeding began as an action at law for breach of contract concerning a lease of certain property by plaintiff to defendant. Defendants interposed equitable defenses and counterclaims denominated equitable title, specific performance, estoppel—crops planted, reformation, tender, and estoppel—waiver of time of essence. Plaintiff interposed a reply requesting that the court quiet title in plaintiff. Plaintiff filed an amended complaint asserting a claim for forcible entry and detainer and breach of contract. The parties treated the issues as joined on these pleadings, without the filing of a new answer and reply. At trial, therefore, plaintiff sought restitution to it of the premises which were the subject of the litigation and a money judgment against defendants for unpaid rent, taxes, attorney's fees and costs. Defendants sought a decree requiring that plaintiff specifically perform the purchase option paragraphs of the lease.

After a trial to the court, the court entered a decree that plaintiff be restored to the premises and have judgment against defendants for the sum of $1,264.19 plus interest in the amount of $48.36 and plaintiff's reasonable attorney's fees in the amount of $3,500, together with plaintiff's costs and disbursements. The decree also quieted title to the subject property. Defendants appeal. We affirm.

Defendants first challenge the trial court's determination of the amount of taxes due pursuant to the lease. The trial court decreed that defendants were liable for all the property taxes on the subject property for the 1978-79 tax year. The relevant portion of the lease reads:

> "Real property taxes for the year 1973-74 have been paid by Landlord. Hereafter all taxes levied against said property shall be paid by [defendants] when due."

Defendants appear to contend that, since the 1978-79 tax year commenced in July, 1978, and terminated in June, 1979, and since the lease expired

during the tax year on January 31, 1979, the amount "due" for taxes would be a portion of the taxes for the entire 1978-79 tax year, determined *pro-rata* according to the percentage of the year the defendants had possession of the property.

The difficulty with defendants' argument is that, on the record before us, it does not appear to have been advanced to the trial court. It was not raised by the pleadings. It arose only once, and then obliquely, on cross-examination during trial. The opening and closing statements were not transcribed. We will not consider it.

█ Defendants' second argument is that they exercised an option to purchase the property. There was no evidence to support this contention. The relevant portion of the lease reads:

"Notice of intent to exercise the option to purchase shall be accompanied by a tender of the purchase price."

Defendants do not contend that they made any tender of the purchase price prior to the filing of this action. Neither is there testimony that plaintiff waived its right to tender of the purchase price by defendants. There is only evidence that the parties did not strictly adhere to the schedule for payment of rent. This establishes neither waiver nor estoppel.

There is some testimony that defendants planted fields which would not be harvested until after the lease terminated and that plaintiff had knowledge, through Gordon Patterson, the president of plaintiff corporation, that the fields were planted. Nevertheless, the testimony shows that defendants' planting was not in reliance on Gordon Patterson's words or acts. Rather, defendants' planting was based upon their own expectation that they would be exercising the option to purchase at a later time.[1]

---

[1] Defendant, Ronald Lewis, testified on direct examination of his attorney as follows:

■ The doctrine of estoppel is only intended to protect those who materially change their position in reliance upon another's acts or representations, if there was a right of reliance and such reliance was reasonable. *Bash v. Fir Grove Cemeteries, Co.,* 282 Or 677, 687, 581 P2d 75 (1978). There is no evidence to support estoppel.

■ Since there was no tender and defendants were not excused from tender, the option was not exercised according to the terms of the lease. An option for purchase of real property must be exercised strictly in accordance with the terms of the option agreement. *Troutman v. Erlandson,* 44 Or App 239, 244, 605 P2d 1200 (1980); *Larson v. Trachsel,* 282 Or 247, 251, 577 P2d 928 (1978). The trial court was therefor correct in determining that the option was not exercised by defendants.[2]

Affirmed.

---

"Q Was anything said between you and Mr. Patterson about the crop you were planting?

"A Yes. He said, Mr. Patterson said at that time, 'I see you're going ahead and farming it.' I said, 'Yes, being as we were going to take up our option, we have to have a crop in the ground so we can make our payment next fall.' He said 'That's fine.'"

[2] Neither was there evidence of defendants giving notice of their election to exercise the option. Notice must be unconditional and manifest determination to accept. *Larson v. Trachsel, supra,* at 251. Both parties testimony shows a lack of a present determination to accept. Defendants were "going to" or "planned on" exercising the option. Furthermore, defendants conditioned their exercise. Defendant, Ronald Lewis, stated:

"A Yes. We went into—I told him at that time that we planned on exercising our option as soon as we got these grain checks in so we could clear up him and our bank so we had a better financial statement, that we were going to proceed in obtaining a loan to purchase our option at that time.

"Q And what did Mr. Patterson say?

"A He said, 'That's fine. Go right ahead on it and when you get the funds, we'll close this deal.'"

From defendant, Ronald Lewis' testimony, it is clear that the "election" was conditional. There was no effective notice.