Argued and submitted January 29, affirmed on appeal and cross-appeal
May 15, petition for review denied August 26, 2003 (335 Or 655)

In the Matter of the Estate of
Ida M. Dauenhauer, Deceased.

Rosalie McPHERSON
and Hilda Farris,
*Appellants - Cross-Respondents,*

*v.*

Carl DAUENHAUER,
in his capacity as Personal Representative of
the Estate of Ida M. Dauenhauer, deceased,
*Respondent - Cross-Appellant,*

*and*

Carl DAUENHAUER,
individually,
Lores Dauenhauer,
and American General Finance, Inc.,
a Delaware corporation,
*Respondents.*

PR98015; A112389

69 P3d 733

James R. Cartwright argued the cause for appellants - cross-respondents. With him on the briefs was Susan A. Miller.

Terrence Kay argued the cause and filed the brief for respondent - cross-appellant Carl Dauenhauer, Personal Representative, and respondents Carl Dauenhauer, individually, and Lores Dauenhauer.

Richard Anderson argued the cause and filed the brief for respondent American General Finance, Inc.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioners Rosalie McPherson and Hilda Ferris are the daughters of Ida Dauenhauer (Ida). Respondent Carl Dauenhauer (Carl) is their brother and the personal representative of Ida's estate. In her will, Ida granted Carl an option to purchase her 89-acre farm near Dayton, Oregon, from the estate. He chose to exercise the option; respondent American General Finance, Inc., financed the purchase and holds a first trust deed on the farm. Petitioners appeal from the trial court's judgment that denied their motion to remove Carl as personal representative and to declare the sale of the farm void, that imposed lesser sanctions for his breaches of fiduciary duty than petitioners had sought, and that did not surcharge him for the rental value of the farm. Carl cross-appeals from some of the sanctions. We affirm on the appeal and the cross-appeal.

Ida died on December 15, 1997. Her will granted Carl an option

"for a period of six months from the date of my death to purchase [the] farm from my estate for the sum of $200,000, the terms of payment to be mutually agreed upon between the residuary legatees. The proceeds of such sale or any previous sale made by me of the farm if it is not sold, shall become a part of the residue of my estate."

Carl and petitioners are the residuary legatees. The parties agree that the farm was worth considerably more than $200,000 at the time of Ida's death. In May 1998, before the six months for Carl to exercise the option had expired, McPherson filed a separate action in which she sought, among other things, a declaration that the purchase price under the option should be the farm's current fair market value. On June 8, a week before the option would expire, Carl sought a court order keeping the option open until the case was resolved. On June 12, the court entered a stipulated order to which Carl and Rosalie had agreed. As relevant, the order provided:

"The Option expressly provided in the Decedent's Will shall remain available as an Option for the stated recipient, Carl Dauenhauer, to exercise or not as he determines, at the

price of $200,000, unless otherwise determined in the Declaratory Judgment action and any appeal(s) therefrom, within sixty (60) days after the Declaratory Judgment action filed regarding that Option is finally determined and any appeals or right to appeal therefrom have been exhausted, and to close the purchase under the Option within forty-five (45) days after the Option is exercised[.]"

At the time of the order, McPherson's complaint in her case against Carl stated only one claim for declaratory relief, and that claim involved several issues in addition to the sale of the farm. Thereafter, McPherson filed an amended complaint that divided the issues into several separate claims; one of those claims was limited to the declaratory judgment action concerning the option, while the others involved the other issues. On November 5, 1998, the court entered a judgment under ORCP 67 B that dismissed the option claim with prejudice. The last day to file an appeal from that judgment was December 5, and McPherson did not do so. The court entered a final judgment on the other claims on April 6, 1999, and McPherson appealed that judgment.

On January 25, 1999, within 60 days after McPherson's right to appeal the ORCP 67 B judgment expired, Carl notified petitioners that he was exercising his option to purchase the farm for $200,000. He obtained approval of the loan for the purchase on March 12 and executed the closing documents on March 16; the title company recorded the deed and disbursed the money on March 19. All of those dates were more than 45 days after January 25, the date that Carl exercised the option.

After the sale closed, petitioners filed this petition in the probate proceeding, seeking to have the sale set aside and for various sanctions against Carl for his alleged breaches of fiduciary duty in other matters related to the administration of the estate. The trial court refused to set the sale aside or to remove Carl as personal representative, but it held that he had breached his fiduciary duties in several respects. As a sanction it ordered that he serve as personal representative without compensation. It also ordered that the estate pay only two-thirds of the fees that its attorney had billed on the

ground that the remaining one-third represented the attorney's representation of Carl in his personal capacity. Petitioners appeal and Carl cross-appeals from those decisions.

In their first assignment of error, petitioners argue that the sale of the farm was invalid because Carl did not comply with the terms of the option, as modified by the June 12 court order. Petitioners emphasize that the order expressly required Carl to close the sale within 45 days of exercising the option. They note that the will provided that the terms of payment for Carl's purchase of the farm were to be those on which the residuary legatees—petitioners and Carl—agreed and that McPherson had insisted that the order require Carl to close the sale within 45 days. Thus, they assert, the 45-day requirement was the agreement for the terms of payment to which the will referred. Petitioners rely on cases that hold that failure to exercise an option strictly according to its terms makes the option void, *see, e.g., Patterson Lumber Co., Inc. v. Lewis*, 47 Or App 705, 709, 615 P2d 372 (1980) (option required tender of purchase price to accompany notice of intent to exercise), and that a court will not grant specific performance of an earnest money agreement that contains a time of the essence clause when the plaintiff failed to tender the down payment by the required date.[1] *See Usinger v. Campbell*, 280 Or 751, 572 P2d 1018 (1977).

■■ Petitioners are correct that, if a party does not exercise an option to purchase land within the time provided, the option becomes void. The problem with that part of their argument is that Carl did exercise the option within the 60-day period that the court's order provided. What he did not do was to close the sale within 45 days after exercising the option, as the order also required. However, in the absence of a clause making time of the essence, a failure to complete a sale of land within the contractual period does not prevent a court from awarding specific performance.

---

[1] The trial court seems to have concluded that the time for exercising the option had not expired when the sale closed because McPherson's appeal from the judgment on her other claims in the same case was still pending. Because ORCP 67 B makes a judgment that complies with its terms final for all purposes, the date of that judgment is the date on which "the Declaratory Judgment action filed regarding that Option [was] finally determined" under the court's order.

In *Wright v. Astoria Company*, 45 Or 224, 77 P 599 (1904), the plaintiff purchaser and the seller of 160 acres of timberland agreed that payment was due by November 12, 1901.[2] Before that date, the seller deposited a deed with the bank that was acting as an escrow, but the plaintiff did not pay the purchase price to the bank and receive the deed until the afternoon of November 22. That morning, the seller sold the property to the defendant, although neither the plaintiff nor the bank was aware of that fact. The plaintiff then brought suit to quiet its title against the defendant. The trial court granted the requested relief, and the Supreme Court affirmed.

The Supreme Court emphasized that there was no agreement that time was an essential part of the contract or that the deed should not be delivered unless the plaintiff paid the purchase price by a date certain. In the absence of such an agreement, in equity time is not of the essence of a sale of real estate. Thus, the court explained

> "[s]pecific performance of a contract for the sale of real estate will ordinarily be decreed, even though the purchase money was not paid or tendered at the exact time fixed by the contract, when the party seeking the performance has acted in good faith, and with reasonable diligence, unless there has been such a change of circumstances affecting the equities of the parties or the justice of the contract as to make it inequitable that it should be enforced."

45 Or at 229. Because there had been no change of circumstances, the plaintiff would have been entitled to specific performance. It was therefore entitled to have the defendant's claim removed as a cloud on its title. Subsequent cases are consistent with the holding of *Wright*. *See Albrachten v. Miller et ux*, 216 Or 379, 381-82, 339 P2d 427 (1959) (time is of essence with respect to date of exercise of option but not with respect to performance of other acts called for in the option contract); *Kaufman v. Hastings*, 93 Or 623, 629, 184 P 265 (1919) (time for fixing real estate agent's commission was

---

[2] There was a dispute about the terms of the agreement, but the Supreme Court assumed that the agreement required the sale to be completed by November 12, as the defendant argued. We make the same assumption in analyzing the holding of the case.

identical to other terms for exchange of properties, and time was not of the essence); *Ochoa v. Crossen*, 106 Or App 246, 251, 806 P2d 195 (1991) (plaintiff acted in good faith and with reasonable diligence and defendant was not prejudiced by delay). Under those cases, Carl would normally have been entitled to specific performance if the estate had refused to complete the sale, even though the 45 days had elapsed.

This case, however, has an additional feature that the above cases did not have. Carl was both the purchaser of the farm (in his individual capacity) and its seller (as the personal representative of the estate). Petitioners argue that that additional fact made the transaction impermissible self-dealing. In general, ORS 114.355(1)(b) authorizes the personal representative to purchase from the estate if the "will expressly authorizes the transaction by the personal representative[.]" Here, the will expressly authorizes the transaction; the court's order extending the deadline for exercising the option does not affect that fact. However, the will's requirement that the residuary legatees agree on the terms of payment and the requirement in the order that Carl complete the sale within 45 days of exercising the option, which implemented that provision, could mean that he had a fiduciary obligation as personal representative of the estate to cancel the sale after the 45 days had passed. If so, the purchase was not one that the will authorized, and ORS 114.355(1)(b) does not govern his action.

In *Wright*, the Supreme Court suggested that, after the purchaser had failed to complete the sale within the required period, the seller "perhaps had a right, upon a failure to make such payment, to revoke the deposit and recall the deed[.]" 45 Or at 229. Because the seller did no such thing, the court's comment was at best *dictum*; its use of "perhaps" indicates as much. The court's holding was that, when the seller failed to revoke the deposit and recall the deed, and the purchaser subsequently complied with the conditions and received the deed, "the title passed, and [the seller] could not thereafter convey the property to another." *Id.* at 230.

The question in this case is whether the *dictum* in *Wright* states a rule of law. If Carl's failure in his personal capacity to complete the purchase within the 45 days made it

legally possible for him in his capacity as personal representative to cancel the sale, then he had a fiduciary obligation to the estate to do so. The heart of his fiduciary duty of loyalty to the estate was to seek the benefit of the estate rather than his personal benefit. *See Chiles v. Robertson*, 94 Or App 604, 619, 767 P2d 903, *modified on recons*, 96 Or App 658, 774 P2d 500, *rev den*, 308 Or 592 (1989). If the estate had the legal ability to cancel the sale, Carl's personal interest in purchasing the property would be in direct conflict with his fiduciary obligation to obtain the maximum return for the estate, and his fiduciary obligation would necessarily control. In that situation, ORS 114.355(1)(b) would not apply because the will would no longer expressly authorize the transaction, and he would have no legal right to specific performance against the estate.

■ Subsequent cases shed little light on this point. In *Kaufman*, the parties agreed that they could cancel an exchange of properties if they were unable to reach a satisfactory arrangement with the broker concerning his commission. Shortly after the defendant attempted to cancel the agreement, the plaintiff and the broker reached an agreement on the commission under which the defendant would pay what the contract required him to pay. The contract apparently did not provide for a specific date for closing. The Supreme Court held that the contract therefore contemplated a reasonable period and that a reasonable period had not run when the plaintiff and the broker reached their agreement. 93 Or at 627-29. *Kaufman*, thus, holds that a party may not cancel a contract for the sale of land that provides no express time limitations if the reasonable period necessary for its performance has not yet run. In this case, however, there is an express time limitation for performance.

In *Heinzel v. Backstrom*, 98 Or App 171, 779 P2d 1037 (1989), *rev'd on other grounds*, 310 Or 89, 794 P2d 775 (1990), the defendant seller under what we believed to be a valid contract sold the property to a third party after the plaintiff purchaser failed to complete the purchase within the required period. We held that the purchaser was entitled to specific performance of the contract. In doing so, we read *Wright* as holding that the seller in that case had the right, when the purchaser failed to perform within the required

time, to terminate the agreement but that the seller had not done so. Similarly, we held in *Heinzel* that the seller had the right to demand performance when the purchaser failed to complete the sale at the required time. However, she did not do so and, we held, as a result the failure to perform was not a basis for denying specific performance. 98 Or App at 175-76. However, because the Supreme Court subsequently reversed our decision on the ground that there was no valid contract, our construction of *Wright* in *Heinzel* is without precedential value.

 In light of the above observations, we return to basic principles of contract law. The failure to close a sale of land within the contractual time is undoubtedly a breach of the contract and entitles the other party to recover any damages that it may have suffered as a result of the delay. However, only a *material* breach entitles a party to rescind a contract. *See Wasserberger v. Amer. Sci. Chem.*, 267 Or 77, 82, 514 Or 1097 (1973). To be material, a breach must go to the substance of the contract and defeat the parties' object in entering into it. *Commerce Mortgage Co. v. Industrial Park Co.*, 101 Or App 345, 349, 791 P2d 132, *modified on recons*, 102 Or App 284, 793 P2d 894 (1990), *rev den*, 311 Or 87 (1991). In the absence of some indication that the parties considered the time for performance to be an essential part of the contract, there is no reason to hold that failure to close within the required period is such a material breach. The delay of a few days in this case did not defeat the object of the agreement. There is no evidence that the delay damaged the estate in any fashion, let alone that it defeated the object of Carl and the estate in entering into the contract to sell the farm. The delay, thus, was not a material breach.[3]

 For the same reason, the delay was not sufficient for equity to refuse to enforce the contract. Because the estate could not legally have rescinded the contract, the normal equitable considerations apply, and they weigh in favor of enforcement. Because Carl would have been entitled to specific performance of the contract if the estate had refused to complete the sale, he did not breach his fiduciary obligations

---

[3] *See also Estate of Schler v. Benson*, 947 SW2d 495, 500-01 (Mo App 1997), for a discussion of the issue in the context of facts that are similar to those in this case.

as personal representative of the estate when he caused the estate to close the sale. Because there is no evidence that the delay caused any damage to the estate, he did not breach his fiduciary obligations by failing to seek to recover damages for the delay in closing. The trial court correctly refused to set the sale aside.[4]

The remaining assignments of error on the appeal and the cross-appeal involve the trial court's actions concerning Carl's administration of the estate. We agree that he breached some of his fiduciary duties and conclude that the sanctions that the trial court imposed were within its discretion. We specifically approve the trial court's limited actions concerning Carl's lease of the farm in light of the delay in closing the sale that was the result of the case that McPherson brought against him. Further discussion would not benefit bench or bar.

Affirmed on appeal and cross-appeal.

---

[4] In short, we conclude that the *dictum* in *Wright* will apply only when the effects of the delay in closing are sufficient to make the delay a material breach.