Argued at Pendleton May 9, affirmed July 17, 1923.

## SPENCER *v.* BALES.

(216 Pac. 746.)

**Contracts—May be Evidenced by Several Connected Writings.**

1. An agreement may be evidenced by several different writings which when connected show the parties, subject matter, terms and consideration.

**Vendor and Purchaser—Memorandum Agreement With Letter of Purchaser Held to Show Binding Contract, not Option.**

2. A written agreement between a vendor and a purchaser, whereby the former agreed to convey described land to the latter for $5,000 to be paid in the manner specified, and which was signed by both vendor and purchaser, in connection with a letter subsequently written by the purchaser in which he stated he would close the deal on a mentioned date, shows a binding agreement to purchase, and not merely an option.

**Contracts—Form not Essential—Use of Poor English Does not Invalidate.**

3. To make an enforceable agreement in writing, no particular form of words is essential, but the intention of the parties as indicated by the language employed is the thing to be sought, and the use of inapt words or poor English will not affect the validity of the agreement, though it may affect its construction.

**Specific Performance—Contract to Purchase Land will be Enforced.**

4. A contract for the purchase of land will be specifically enforced, regardless of the character of the land.

**Vendor and Purchaser—Vendor Held to have Reasonable Time to Correct Defects in Deed.**

5. Where a contract for the sale of land gave the purchaser ten days to examine the abstract and provided that in case of any

defects of title they should be corrected by the vendor if notice was given within the ten days, the vendor had a reasonable time within which to prepare and tender a new deed of conveyance after receiving notice of objections to the deed originally tendered with the abstract.

**Vendor and Purchaser—Evidence Held not to Show Fraudulent Misrepresentations by Vendor.**

6. In a suit for specific performance of defendant's contract to purchase land, evidence *held* not to show fraudulent misrepresentations by the vendor as to the quality of the land which was twice examined by the purchaser, or as to the amount of the rental; the amount stated by the vendor clearly being the rental for 120 acres of land of which the forty acres sold formed a part.

From Wallowa: J. W. KNOWLES, Judge.

In Banc.

This is a suit by John J. Spencer, the vendor, against Thomas Bales, the vendee, for the specific performance of a contract to purchase real property. The defendant appeals from a decree in favor of plaintiff.

The record discloses the following: After the usual negotiations plaintiff and defendant each executed a written agreement which reads thus:

"This Agreement, made and entered into, in duplicate, this the third day of August, A. D. 1920, wherein John J. Spencer is party of the first part, and Thomas Bales is party of the second part.

"Witnesseth: That the party of the first part covenants and agrees with the party of the second part to bargain, sell and transfer by good and sufficient warranty deed, the following described property, to wit:

"The East half of the East half of the Southwest quarter of Section Twenty (20), Township Two (2),

---

6. Whether fraudulent representation by vendor of extent or proportion of land of particular kind included within tract sold is actionable where purchaser inspects land, see note in 30 **L. R. A.** **(N. S.)** 55.

South of Range Forty-five (45), East of Willamette
Meridian, in Wallowa County, Oregon. Together
with one-third of all the water right now owned by
said Spencer amounting to 72 or 73 inches for irriga-
tion purposes.

"All in and for the consideration of Five Thousand
Dollars ($5,000.00) to be paid at the time, in the
amount and in the manner as follows, to-wit:

"Five Thousand Dollars ($5000.00) to be paid at
the time of the delivery of deed and merchantable ab-
stract, abstract to show that the said Spencer has
good right to sell and transfer good and sufficient title
to the above described lands, and to pay the same in
cash within twelve days from date hereof, and there-
after within thirty days, upon the presentation of a
good and sufficient warranty deed, executed by the
party of the first part, conveying the above described
premises, together with the water, conveyed by the
proper method of conveyance, all free and clear of all
incumbrances, together with the abstract of title show-
ing that the party of the first part has right to so
transfer said property, and the party of the second
part shall have ten days from and after the presen-
tation of the abstract to examine the same and to pass
upon the sufficiency of it.

"In case of any defects of title to the same, the same
shall be corrected by the party of the first part, and
at his expense, provided the party of the second part
notifies him, the party of the first part, within ten
days from and after the delivery of the abstract.

"In Testimony Whereof, the parties hereto have
hereunto set their hands to this agreement in dupli-
cate this 3d day of August, 1920.

"(Signed) JOHN J. SPENCER.
"(Signed) THOMAS BALES."

Plaintiff resided at Walla Walla, Washington, at
the time, and was separated from his wife. Defend-
ant resided in Wallowa County, Oregon. Mr. Spencer
furnished Bales an abstract of title to the land, ac-

cording to which Mr. Spencer's wife executed a quit-claim deed to him for all of her interest in and to the property in question. Within the thirty days mentioned in the contract, Mr. Spencer presented a warranty deed to Mr. Bales, and the deed was then presented to Daniel Boyd, an attorney at law, by Mr. Bales. After the thirty days specified in the agreement, Mr. Boyd informed Mr. Spencer that the deed in question was not sufficient for the reason that the deed from Mrs. Spencer to her husband was void under the Oregon statutes and it would be necessary to have a deed signed by Spencer and his wife. Mr. Spencer and his wife, Frances B. Spencer, then executed a deed on a Washington blank form, and this deed was tendered to Mr. Bales who presented it to Daniel Boyd for his opinion. Mr. Boyd, soon after this tender, made a trip to Massachusetts and did not return until some time about January, 1921. After Mr. Boyd returned he notified Mr. Spencer that Mr. Bales objected to the deed in question for the reason that it was on a Washington form, and that Mr. Bales desired a warranty deed on an Oregon form.

During this time, from August 3, 1920, until January 31, 1921, Mr. Bales in various conversations with Mr. Spencer informed him that he would be willing to accept a deed at any time, for the reason that he had his money loaned, and it was drawing interest. On January 31, 1921, Mr. Bales wrote Mr. Spencer the following letter:

"Joseph, Oregon, Jan. 31, '21.
"Mr. J. J. Spencer, Walla Walla.
"Dear Sir: In regards to our deale I loned the money till the 14 of Feb. then I will close it up I did not no when you would get the Deed reddy so I did

not like to get no Interest on it, so Just Rest Easy I will fix it the 14th.

"Yours truly,
"THOS. BALES."

Some time subsequent to January 31, 1921, Mr. Bales informed Mr. Spencer that he understood Mrs. Spencer was insane and could not give a good deed, consequently he would not accept a deed from Mr. and Mrs. Spencer, and would not comply with the terms of the contract. On March 5, 1921, Mr. Spencer tendered to Mr. Bales another deed in regular form and an abstract of title to the real property described in the contract, which tender was coupled with the demand for the payment of $5,000 according to the terms of the agreement. At the time of the tender of this deed Mr. Bales claimed that he was willing to proceed under the terms of the contract, but would not accept the deed because he did not think he could get a good title on account of the incompetency of Mrs. Spencer.          AFFIRMED.

For appellant there was a brief over the names of *Mr. Daniel Boyd* and *Messrs. Burleigh & Burleigh,* with an oral argument by *Mr. J. A. Burleigh.*

For respondent there was a brief and oral argument by *Mr. A. W. Schaupp.*

BEAN, J.—The defendant demurred to plaintiff's complaint and resisted the suit upon the grounds: First, that there was no contract of sale of the land, the agreement was merely an option to purchase; second, that this is not a case for specific perform-

ance; third, that plaintiff has not complied with the terms of the agreement; fourth, that the contract, if any, was procured by fraudulent misrepresentation. Defendant's assignments of error raise these four points. In support of defendant's contention that the agreement is only an option, counsel for defendant cite and rely upon the cases of *Sprague* v. *Schotte,* 48 Or. 609 (87 Pac. 1046); *Lemler* v. *Bord,* 80 Or. 224, 227 (156 Pac. 427, 1034); *Friendly* v. *Elwert,* 57 Or. 599, 605 (105 Pac. 404, 112 Pac. 1085, Ann. Cas. 1913E, 357). Plaintiff contends that the written agreement evidences a complete contract for the sale by Spencer, and purchase by Bales of the land, especially when taken in connection with the letter of acceptance of Bales dated January 31, 1921, which is set forth in the complaint and quoted above.

The main contention of defendant in regard to a want of mutuality in the agreement of August 3, 1920, is that Bales did not agree to pay the sum of $5,000 for the land. In considering this feature of the case attention must be given to two writings, the agreement of August 3, 1920, and the letter of Bales dated January 31, 1921. They both relate to the same transaction.

1. It is a familiar rule of law that an agreement may be evidenced by several different writings, which when connected, show the parties, subject matter, terms, and consideration: 13 C. J., p. 304, § 126.

2. The memorandum of August 3, 1920, contains all the terms of the sale, the names of the vendor and vendee. They mutually covenant and agree that Spencer is to bargain, sell, and convey a good and

sufficient title to the land described therein, together with a specified water right, for the consideration of $5,000, to be paid at the time of the delivery of the deed and merchantable abstract showing a good title to be conveyed. Thomas Bales subscribed to the further stipulation:

"To pay the same in cash within twelve days from date hereof, and thereafter within thirty days, upon the presentation of a good and sufficient warranty deed, executed by the party of the first part, conveying the above described premises, together with the water, conveyed by the proper method of conveyance, all free and clear of all encumbrances, together with the abstract of title showing that the party of the first part has right to so transfer said property, and the party of the second part shall have ten days from and after the presentation of the abstract to examine the same and to pass upon the sufficiency of it."

The agreement "to pay the same in cash," evidently refers to the price of $5,000. Any doubt about the matter seems to be removed by Bales' letter wherein he states referring to the deal that, "I will close it up," and again, "I will fix it the 14th." By letter of January 31, 1921, Bales accepted the terms of the memorandum and thereby became bound by its terms, if he was not already so bound when he subscribed to the agreement. By this letter defendant put his own construction upon the agreement as a contract of sale and purchase. Twice he subscribed to the stipulation to pay $5,000 for the land. In construing the contract evidenced by the two writings, a material test is: Did the minds of the parties meet, and if so upon what proposition? We think, taking the agreement by its four corners in

connection with the letter, it is clear that both parties assented to the contract and became bound by the plain terms and conditions thereof: *Oregon Home Builders* v. *Crowley,* 87 Or. 517, 533 (170 Pac. 718, 171 Pac. 214).

3. To make an enforceable agreement in writing no particular form of words is essential. The intention of the parties, as indicated by the language employed, is the thing to be sought. The use of inapt words or poor English will not affect the validity of the agreement although it may affect its construction: 13 C. J., p. 303, § 125. Spencer agreed to sell and convey the land to Bales for a specific price. Spencer did not agree to give Bales an option to purchase the real estate. Bales accepted the proposition and assented, and subscribed his name thereto.

Defendant cites *Sprague* v. *Schotte,* 48 Or. 609 (87 Pac. 1046) as showing that the agreement herein is an option and not a binding contract. In the Sprague case there was a mere offer to sell and no obligation to purchase. The contract in that case cannot be compared with the contract in the present case, for they are entirely different. Defendant cites *Lemler* v. *Bord,* 80 Or. 224 (156 Pac. 427, 1034), for comparison as authority that the contract under consideration is an option and not a contract. Like the former case, *Lemler* v. *Bord* is not applicable, for the contracts are entirely dissimilar. In construing the contract in the instant case we must take into consideration that there is a distinct promise to pay on the part of defendant.

4. As to the propriety of a court of equity enforcing a specific performance, the case is much like *Larrabee* v. *Bjorkman,* 79 Or. 467 (155 Pac. 976). In the latter case, at page 471, Mr. Justice BURNETT quoted with approval from 36 Cyc. 552:

"Where land or any estate or interest in land is the subject matter of the agreement, the jurisdiction to enforce specific performance is undisputed, and does not depend upon the inadequacy of the legal remedy in the particular case. It is as much a matter of course for courts of equity to decree a specific performance of a contract for the conveyance of real estate which is in its nature unobjectionable as it is for courts of law to give damages for its breach. Equity adopts this principle, not because the land is fertile, or rich in minerals, but because it is land, a favorite and favored subject in England and every country of Anglo-Saxon origin. Land is assumed to have a peculiar value, so as to give an equity for specific performance, without reference to its quality or quantity."

By the compact Spencer became bound, and could be compelled to specifically perform the contract. Bales was just as firmly bound to perform the conditions of the agreement on his part. Even-handed justice and equity would require an enforcement of the contract by Bales.

5. The agreement appears to contemplate that if the vendee should notify the vendor within ten days after the delivery of an abstract of title, of any defect in the title to the land, Spencer, the vendor, should have a reasonable time to correct the defect. The two first deeds presented by Spencer to Bales were not satisfactory. Corrections were made within a reasonable time and a warranty deed conveying good title to the real estate was tendered to defendant, which he refused to accept without sufficient reason.

6. Defendant pleaded and claims that plaintiff made fraudulent representations to induce defendant to purchase the land; that he was led to believe that the land was free from weeds and not foul; and that the forty acres had been rented by plaintiff for a cash rental of $1,000 per annum. The testimony does not support this defense. Bales was a farmer living near the land and examined the land twice. If the land had been unreasonably weedy he was capable of noticing it and would probably have done so. The real trouble in this respect appears to be, that owing to the controversy the land was not cultivated during the season of 1921, and of course the weeds flourished. Bales could not reasonably have believed that the forty-acre tract had been rented for $1,000 per annum. Plaintiff owned other land adjoining, about 120 acres in all, and reference was made by him to the whole tract.

The real reason for the refusal of defendant to accept a deed of the land seems to be that he heard the wife of plaintiff was insane and not competent to execute the deed tendered. Mr. Bales' fears in this respect were not well founded. It is clearly shown by the testimony that at the time of the execution of the deed Mrs. Spencer was thoroughly competent to execute the deed in question and convey a good title.

The decree of the Circuit Court should be affirmed. It is so ordered.                 Affirmed.