Argued and submitted December 2, 1988, reversed and remanded with instructions September 6, Johnson's reconsideration and Backstrom's reconsideration denied October 27, 1989, both petitions for review allowed January 5, 1990 (309 Or 231)

# HEINZEL et al,
*Appellants,*

*v.*

# BACKSTROM et al,
*Respondents.*

## (CV 86-410; CA A47524)
779 P2d 1037

Michael B. Mendelson, Portland, argued the cause and filed the briefs for appellants. With him on the briefs was Michael B. Mendelson, P.C., Portland.

Michael J. Martinis, Salem, argued the cause and filed the brief for respondent Grace F. Backstrom.

Michael G. Gunn, Newberg, argued the cause and filed the brief for respondents Leonard Johnson and Larry Johnson.

Before Graber, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

Rossman, J., dissenting.

## JOSEPH, C. J.

Plaintiffs seek specific performance of an agreement for the sale of a commercial building and two lots in Newberg owned by defendant Backstrom. The trial court found that there had been a valid contract of sale originally but that Backstrom was entitled to sell the property to defendants Johnson[1] after plaintiffs did not deposit the purchase price in escrow by the agreed closing date. Plaintiffs assert that the court erred in holding that the agreement expired on that date. On *de novo* review, we reverse.

In August, 1986, plaintiffs expressed an interest in purchasing the property, and on September 4, Rodger Heinzel handwrote an agreement,[2] which Backstrom and the Heinzels signed:

"Sales agreement between Rodger and Judith Heinzel and Grace Backstrom.

"I Grace Backstrom hereby agree to sell to Rodger and Judith Heinzel my properties described as, Lt. 8 Bl 2 Everests and lt 1 & 2 BL 2 Everests in the City of Newberg. The property to be free of encumbrances except Yamhill County property taxes both past due and present. The purchase price to be $45,000 for Lt 8 Bl 2 Everests and $5,000 each Lt 1 & 2 Bl 2 Everests, the total value for all property being $55,000. Escrow to be closed on October 1, 1986."

No money was then paid by the Heinzels. The parties opened an escrow, the terms of which provided that Backstrom would receive a net payout of $55,000.

On September 9, Backstrom consulted an attorney, who advised her that the agreement was probably binding until October 1. On September 11, she received an offer from the Johnsons. Backstrom did not tell plaintiffs about the offer, and they did not communicate with her after that date.

---

[1] Plaintiffs joined the Johnsons as indispensable parties. *See Cottrell v. Prier,* 187 Or 454, 212 P2d 87 (1949).

[2] He was experienced in real estate transactions.

The sale did not close on October 1, and on October 16 she agreed to sell the property to the Johnsons.[3]

On October 28, the escrow became aware that there were two sets of buyers for the Backstrom property and, being unable to tell plaintiffs that directly, contacted them and asked that they tell Backstrom that the documents were ready to sign. When they did, Backstrom told them that she had already sold the property. Backstrom made no tender of a deed to plaintiffs. Plaintiffs attempted to tender payment on October 29 and, when Backstrom refused to accept it, they brought this action.

■ Backstrom argues that the contract was a mere option and terminated by its own terms on October 1; therefore, she had no duty to offer a deed to plaintiffs. Claiming that the agreement was a sale contract, plaintiffs maintain that Backstrom had to notify them of her intent to sell the property to others or, in any event, to allow them a reasonable time after the closing date to close. The essential contents of a contract to sell real property are

"(1) the parties; (2) the subject matter; (3) the mutual promises; and (4) the price and consideration and terms of payment if the sale is not for cash." *Shipler Logging v. Ponderosa Inv.*, 45 Or App 325, 329, 608 P2d 211, *rev den* 289 Or 587 (1980), *quoting* Friedman, *Contracts and Conveyances of Real Property* 69 (3d ed 1975).

The agreement here is for a cash sale and contains the names of the parties, the subject matter, the price and consideration,

---

[3] The Heinzels' purchase of the Backstrom property was part of a three-way exchange involving the sale of California property owned by Judith Heinzel. The Heinzels mentioned to Backstrom that they were interested in purchasing her property as part of a tax-deferred exchange, but they did not tell her the details of the transaction.

On August 19, 1986, Rodger Heinzel opened an escrow in Newberg for the sale of the California property to the Salvation Army. No written agreement regarding the sale was ever placed in escrow but, on August 27, the Salvation Army deposited $405,000. On September 19, Rodger learned that the Salvation Army purchase was in doubt and, on September 24, the escrow agent received formal notice that the Salvation Army was withdrawing from the transaction. On September 25, the Salvation Army requested a refund of the $405,000 by letter. By September 24, Rodger had negotiated a sale of the California property to another party. On September 29, a new escrow was opened with a $10,000 earnest money deposit and a sale agreement. The closing date was to be November 3. On October 1, no funds on deposit in escrow were available to apply to the Backstrom property sale, but the Heinzels did have the funds to pay in cash on October 1.

but it does not contain express mutual promises. Although Backstrom promised to sell, plaintiffs did not expressly promise to buy. For that reason, Backstrom argues that it is only an option. *See McCreight et ux v. Girardo,* 205 Or 223, 234, 280 P2d 408, 287 P2d 414 (1955). However, the terms reflect an indubitable intent to bind the parties. "[T]he whole writing [is] 'instinct with an obligation,' imperfectly expressed." *Wood v. Duff-Gordon,* 222 NY 88, 91, 118 NE 214 (1917). (Citations omitted.) The agreement is a contract to sell and to buy real property.

■ Backstrom and the Johnsons argue that, even if the agreement is a land sale contract, it terminated on October 1, 1986, when plaintiffs failed to tender payment. They cite *Usinger v. Campbell,* 280 Or 751, 572 P2d 1018 (1977), and *Guillory v. Dussin Inventory,* 272 Or 267, 536 P2d 501 (1975), but neither case provides guidance. In *Usinger,* the agreement expired by its own terms when the agreed closing date passed without performance, because there was a time of the essence clause. In *Guillory,* the agreement did not contain a time of the essence clause, but neither party was able to perform on the closing date. Here, the contract provides no termination date or time of the essence clause, and there is no evidence that either party was incapable of performing on October 1, 1986.

In *Wright v. Astoria Co.,* 45 Or 224, 77 P 599 (1904), the court said:

> "In equity the time of payment is not of the essence of a contract for the sale of real estate unless made so by express agreement of the parties, by the nature of the contract itself, or by the circumstances under which the contract was executed.
>
> "Specific performance of a contract for the sale of real estate will ordinarily be decreed, even though the purchase money was not paid or tendered at the exact time fixed by the contract, when the party seeking the performance has acted in good faith, and with reasonable diligence, unless there has been such a change in circumstances affecting the equities of the parties that it should be enforced." 45 Or at 228. (Citations omitted.)

The court held that the seller had the right, when the buyers failed to tender payment on the agreed date, to terminate the

transaction, but he did not do that. Therefore, the buyers could specifically enforce the agreement.

Generally, under rules of equity, a party seeking specific performance must show, not only that

> "he has a valid, legally enforceable contract, but also that he has complied with its terms by performing or offering to perform on his part the acts which formed the consideration of the undertaking on the part of the defendant, *or that he is ready, able and willing to perform his obligations under the contract, in their entirety." Percy v. Miller,* 197 Or 230, 239, 251 P2d 463 (1952). (Emphasis supplied.)

When the October 1 deadline passed without payment by plaintiffs, Backstrom had the right to demand performance. She did not. Although plaintiffs also failed to communicate their intentions, they had no reason to believe that the contract would automatically terminate on October 1, 1986. They had a valid contract, and the evidence is that they were ready, willing and able to perform it. Backstrom, on the other hand, made no showing that would excuse her performance except that she made a different deal without any contact with plaintiffs.[4] Plaintiffs had a reasonable time within which to tender payment to Backstrom. Under the circumstances, their tender of payment on October 29, 1986, was within a reasonable time.

Reversed and remanded with instructions to enter judgment for plaintiffs.

**ROSSMAN, J.,** dissenting.

This is an equity case, though—given the majority's result—it is difficult to recognize it as such. Because I would reach the same result as the trial judge, who was well aware of the equities involved, I must respectfully dissent.

The majority admits that "plaintiffs did not expressly promise to buy" defendant's property, but concludes, nonetheless, that the document "reflects an indubitable intent to bind the parties." 98 Or App at 175. I do not believe that the record shows that the Heinzels intended to bind themselves.

---

[4] Backstrom testified that, on September 9, her attorney advised her not to communicate with plaintiffs thereafter.

The document in this case parallels that signed by the defendant in *Sprague v. Schotte,* 48 Or 609, 610, 87 P 1046 (1906):

> " 'This Agreement entered into this sixth day of February, 1905, between A.C. Schotte and A.P. Sprague, both of Elgin, Ore., whereby A.C. Schotte agrees to sell, deliver and transfer by good and sufficient warrantee [sic] deed to said A.P. Sprague his homestead on the Wallowa River * * * for the sum of sixteen hundred dollars ($1,600.00). This agreement is in force from this date to April first, 1905, when it will become void.' "

Before April 1, without the knowledge or consent of the plaintiff, the defendant sold the property to a third party. The court refused to grant the plaintiff specific performance. It held that there was no mutuality or consideration to support a contract. The instrument was merely an offer to sell the land and, until accepted, imposed no obligation whatever on either party and was subject to revocation.

The requirements of a contract of sale, as distinguished from an option, were emphasized in *Strong et al. v. Moore et al.,* 105 Or 12, 20-21, 207 P 179 (1922):

> "The rights and obligations arising out of an option to purchase are to be contrasted rather than merely to be compared with the rights and obligations arising out of a contract of sale. An option is simply a contract by which an owner agrees that another shall have the privilege of buying his property at a fixed price and within the time expressly or impliedly prescribed by the writing. The optionee is not obliged to buy, although he may, if he chooses, elect to buy. A contract of sale imposes upon the vendee an obligation to buy. An option confers a privilege or right to elect to buy but it does not impose any obligation to buy.
>
> "* * * * *
>
> "An option is a continuing offer. If the option is without consideration it may be withdrawn before acceptance; but if it was given for a consideration it cannot be withdrawn before the expiration of the prescribed time without the consent of the optionee." (Citations omitted.)

The agreement here is nothing more than an option. It does not obligate the Heinzels to do anything. It states that Backstrom will sell her property to the Heinzels for $55,000, but it does not bind the Heinzels to pay. *Cf. Spencer v. Bales,*

108 Or 339, 216 P 746 (1923) (defendant's distinct promise to pay created a binding contract of sale, not an option). The agreement gave the Heinzels the privilege of buying the property but did not oblige them to do so, *see Aspinwall, executrix v. Ryan et al,* 190 Or 530, 535, 226 P2d 814 (1951),[1] and there was no consideration given for Backstrom's offer.

The evidence shows that an option is what the Heinzels intended to have. The Backstrom purchase was to be part of a three-way exchange of property by the Heinzels. That exchange had not been finalized at the time the agreement was signed.[2] The document, drafted by Mr. Heinzel, who was experienced in real estate, gave the Heinzels flexibility. Their silence in keeping Backstrom informed of the three-way exchange and their apparent unwillingness to pay the purchase price before the exchange was finalized show their intention not to bind themselves in the event the exchange did not take place. The trial judge, who had the benefit of eye-balling and evaluating the witnesses first-hand, had no trouble in determining what was going on.

Even if we accept the notion conjured up by the majority that the Heinzel document somehow rises to the level of a contract of sale, I would still decide this case in Backstrom's favor. It seems quite clear to me that the Heinzels have not shown that they acted "in good faith" so as to be entitled to enforce the terms of the sale. They tendered payment on October 29, 1986, almost one month late. They claim that they could have paid cash on October 1. They did not do so.[3] Their failure to tender performance on the agreed date

---

[1] Although Heinzel titled the writing a "sales agreement," instruments using terms of sale which do not bind a party to purchase are options and not contracts of sale. *Aspinwall executrix v. Ryan, et al, supra,* 190 Or at 536.

[2] In fact, one sale fell through after the signing of the document, even though money had been placed in escrow for that sale. The new sale of the California property was not to have closed until November 3.

[3] Plaintiffs testified that they met Backstrom on the street a few days after the agreement, told her that they were having a "little problem with the mail" and asked if there would be any difficulty if the escrow closed later than October 1. Plaintiffs stated that Backstrom responded that there was no problem. Backstrom did not recall the meeting. The trial court determined that, although it was possible that such a meeting occurred, anything that might have been said did "not approach the dignity of a modification of the original agreement." Even if the exchange did take place, it does not excuse the Heinzels' failure to perform on the date of their agreement. Their failure to tender payment on the closing date was unrelated to the mails. They had the money to pay.

was no more excusable than Backstrom's failure to demand performance. Thus, under either analysis, Backstrom should win.

Accordingly, I would affirm the trial court.