Argued and submitted February 8, the decision of the Court of Appeals reversed and the judgment of the circuit court affirmed June 21, reconsideration denied August 28, 1990

Rodger HEINZEL
and Judith Heinzel,
aka J.A.W. Heinzel,
*Respondents on Review,*

*v.*

Grace F. BACKSTROM,
Leonard Johnson and Larry Johnson,
*Petitioners on Review.*

(TC CV86-410; CA A47524; SC S36554, SC S36557)

794 P2d 775

Michael J. Martinis, Salem, argued the cause and filed the petition for petitioner on review Grace F. Backstrom. With him on the petition was Webb and Martinis, Salem.

Michael G. Gunn, Newberg, argued the cause and filed the petition for petitioners on review Leonard Johnson and Larry Johnson. With him on the petition was Michael G. Gunn, P.C., Newberg.

Michael B. Mendelson, Portland, argued the cause for respondents on review. On the response were Wade V. Regier, William E. Loose, and Gary M. Bullock, P.C., Portland.

Before Peterson, Chief Justice, and Carson, Jones,** Gillette, Van Hoomissen, Fadeley and Unis, Justices.

VAN HOOMISSEN, J.

---

** Jones, J., resigned April 30, 1990.

**VAN HOOMISSEN, J.**

Plaintiffs Rodger and Judith Heinzel brought this action for specific performance of an agreement for the sale of real property owned by defendant Backstrom. The first and dispositive issue is whether the agreement is a contract. The trial court found the agreement to be a contract; but it also found that because the Heinzels had not tendered performance by the agreed closing date, Backstrom had been free to sell the property to the defendants Johnson.[1] The Court of Appeals reversed. It found the agreement to be a contract, that the Heinzels had tendered performance within a "reasonable time" after the agreed closing date and, therefore, that they are entitled to specific performance. *Heinzel v. Backstrom,* 98 Or App 171, 779 P2d 1037 (1989). On *de novo* review, we find the agreement to be a mere offer to sell which by its own terms expired before the Heinzels tendered performance. Accordingly, we reverse the decision of the Court of Appeals.

The relevant facts are uncontested. The real property which is the subject of this action consists of one commercial building and lot and two contiguous vacant lots that Backstrom had inherited from her father. After her husband died in 1984, Mrs. Backstrom decided to sell this property.

In August, 1986, the Heinzels contacted Backstrom expressing their interest in buying her property. No agreement was reached at that time. Several days later, the Heinzels offered Backstrom $55,000 cash for her property. Again, no agreement was reached.

About a week later, Backstrom orally offered to sell her property to the Heinzels for $55,000 cash, if the Heinzels would also agree to pay all delinquent real property taxes on the property as well as the taxes for the current year. Sometime during their negotiations, the Heinzels mentioned to Backstrom that they were interested in structuring the purchase of her property as one part of a tax deferred real property exchange.[2] However, they did not inform her of the

---

[1] The Heinzels joined the Johnsons as indispensable parties. *See Cottrell v. Prier,* 187 Or 454, 460-61, 212 P2d 87 (1949).

[2] The Heinzels owned property in California which they sold to the Salvation Army in August 1986 for $400,000. That transaction was to be part of a three-way tax deferred real property exchange. Using the $400,000 from the sale of their California

details of the exchange.

On September 4, 1986, after verifying the amount of taxes owing on Backstrom's property, Mr. Heinzel drafted the following document:

"September 4, 1986

"Sales agreement between Rodger and Judith Heinzel and Grace Backstrom.

"I Grace Backstrom hereby agree to sell to Rodger and Judith Heinzel my properties described as, Lt. 8 Bl 2 Everests and lt 1 & 2 Bl 2 Everests in the City of Newberg. The property to be free of encumbrances except Yamhill County property taxes both past-due and present. The purchase price to be $45,000 for Lt 8 Bl 2 Everests and $5,000 each for Lt 1 & 2 Bl 2 Everests, the total value for all properties being $55,000. Escrow to be closed on October 1, 1986."

The document was signed by all the parties. The Heinzels paid Backstrom no money at that time.

That same day, Mr. Heinzel opened an escrow for the

property, the Heinzels intended to purchase three pieces of Oregon real estate. On August 19, 1986, Mr. Heinzel opened an escrow and on August 27 the Salvation Army deposited $400,000 with the escrow holder.

It was the Heinzels' plan that the titles to the Oregon properties the Heinzels had arranged to purchase (including Backstrom's) would initially be conveyed to the Salvation Army in exchange for cash from the $400,000 in the escrow account, following which the Salvation Army would reconvey the Oregon properties to the Heinzels in exchange for their California property. By so structuring the transactions, the Heinzels expected a deferral of the taxes they would have had to pay if they sold their California property for cash. For Backstrom the result would be the same as if she had received the purchase price directly from the Heinzels.

On September 19, Mr. Heinzel learned that the Salvation Army California purchase was in doubt, and on September 23 the escrow holder received formal notice that the Salvation Army was withdrawing from the sale. On September 25, the Salvation Army requested a refund of its $400,000. The Heinzels, who had a new purchaser for the California property, agreed to the refund.

The sale to the new purchaser was scheduled to close on November 3. The Heinzels did not inform Backstrom of the delay caused by the failure of their sale to the Salvation Army.

As of October 1, no funds were available in escrow to purchase Backstrom's property in the context of a three-way exchange. The Heinzels did have cash available for a direct cash purchase from Backstrom, and they testified that they would have paid Backstrom if she had demanded payment on October 1. However, they would not have been in a position to realize their desired tax advantage on the purchase until the sale of their California property closed on November 3.

consummation of the sale.[3] Heinzel ordered and obtained a preliminary title report, but he did not send a copy of that report to Backstrom. Neither he nor the escrow holder had any communication with Backstrom concerning the opening of that account or about the escrow holder's involvement in the sale until October 28, 1986.

After signing the agreement, Backstrom had become concerned about the transaction. On September 9, 1986, she consulted her attorney, who told her that he would examine the document. He advised her not to communicate with the Heinzels thereafter and to refer any inquiries about the matter to him.

On September 11, a realtor notified Backstrom that the defendants Johnson wanted to buy her property. Backstrom again consulted her attorney, who told her that her agreement with the Heinzels probably was binding until October 1. He again advised her to refer any inquiries about the matter to him. He also arranged for the Johnsons' offer to remain open until after October 1. Neither Backstrom nor her attorney communicated with the Heinzels. When the October 1 deadline passed with no word from the Heinzels, Backstrom's attorney told her that any agreement she had with them had expired. On October 16, Backstrom sold the property to the Johnsons.[4]

On October 28, 1986, the escrow holder asked the Heinzels to inform Backstrom that the escrow documents on her sale to the Heinzels were ready for her signature. Mr. Heinzel conveyed this information to Backstrom that same day, at which time Backstrom told him that she already had sold the property to the Johnsons. That was the Heinzels' first notice of Backstrom's sale to the Johnsons.

On October 29, 1986, the Heinzels deposited the purchase price in escrow. Backstrom refused to accept it. On

---

[3] The record does not support the Court of Appeals' finding that "The parties" opened an escrow. The escrow was opened by Mr. Heinzel alone. After September 4, 1986, Backstrom took no steps to participate in a sale transaction. She only waited to see if the Heinzels would tender performance by October 1, 1986.

[4] The statement in the Heinzels' brief on review that "The Court of Appeals held that Backstrom's failure to contact [the Heinzels] and inform them of her intent to sell the property to the Johnsons after October 1, 1986, was done in bad faith" is not supported by any language in the Court of Appeals' opinion.

November 3, the escrow holder mailed Backstrom the escrow documents on her sale to the Heinzels. When Backstrom did not sign the documents, the Heinzels commenced this action for specific performance and for damages they had allegedly suffered by losing the tax benefits they had anticipated from acquiring Backstrom's property in the three-way tax deferred real property exchange.

After finding that Mr. Heinzel, and to some extent his wife, were sophisticated in real estate matters but that Backstrom had little, if any, such experience, the trial court concluded:

> "[T]here was a valid agreement between the parties for the purchase and sale of the property; that the agreement expired on the 1st day of October, 1986; and that the time for closing the agreement was not extended by mutual agreement of the parties."[5]

On *de novo* review, the Court of Appeals agreed with the trial court that a valid agreement existed between the parties. Even though the court found that the document signed by the parties "does not contain express mutual promises" in that the Heinzels did not expressly promise to buy Backstrom's property, the court concluded that the document "is a contract to sell and buy real property" because its "terms reflect an indubitable intent to bind the parties." *Heinzel v. Backstrom, supra,* 98 Or App at 175. The Court of Appeals relied on Judge Cardozo's oft-quoted language from *Wood v. Lucy, Lady Duff-Gordon,* 222 NY 88, 91, 118 NE 214 (1917):

> "[T]he whole writing may be 'instinct with an obligation' imperfectly expressed. * * * If that is so, there is a contract."[6]

---

[5] Mr. Heinzel testified that a few days after September 4, 1986, the Heinzels met Backstrom on the street and told her that the paperwork necessary to complete the sale was moving slowly through the mails, and that they might require some additional time to close. According to him, Backstrom said that that would be "no problem." Backstrom testified that she did not recall any such meeting and that she had only been interested in getting her money from the Heinzels. Backstrom's attorney testified that he had "grilled" Backstrom extensively about the details of her agreement with the Heinzels and that she had said nothing about such a meeting. The trial court found that the Heinzels had not established by a "preponderance of the credible evidence" that the parties had modified their original agreement. On *de novo* review, we agree that the parties did not extend the date certain in their agreement.

[6] We note, however, that in *Duff-Gordon,* Judge Cardozo proceeded to identify and analyze the "many circumstances" in which "the implications of a promise here find support." In contrast, the Court of Appeals merely stated the rule without identifying and analyzing which provisions within the document it believed reflected "an indubitable intent" to bind the Heinzels' to purchase Backstrom's property.

Having found a valid contract, the Court of Appeals further found that the agreement had no "time is of the essence" clause and, therefore, the Heinzels had a "reasonable time" after the October 1 closing date within which to tender performance, and that the Heinzels' tender on October 29 was made within a reasonable time. It concluded, therefore, that the Heinzels were entitled to specific performance.[7] *Heinzel v. Backstrom, supra,* 98 Or App at 175-76. Judge Rossman dissented. He found that the Heinzels had not intended to bind themselves to buy Backstrom's property and that the parties' agreement was nothing more than an option unsupported by any consideration. 98 Or App at 176-78.

On review, Backstrom contends that the September 4, 1986 document was a continuing offer which expired on October 1, 1986, when it was neither accepted nor performed by the Heinzels. The Heinzels contend that the document was a valid bilateral purchase and sale agreement which did not expire by its own terms on October 1, 1986, and that the Court of Appeals correctly held that specific performance was required under the terms of the contract.

We review this equitable action *de novo*. ORS 19.125.

---

[7] The Court of Appeals quoted the following from our decision in *Wright v. Astoria Co.,* 45 Or 224, 228-29, 77 P 599 (1904) as authority for holding that the Heinzels had had a "reasonable time" to perform the agreement after the date set for closing:

"In equity the time of payment is not of the essence of a contract for the sale of real estate unless made so by express agreement of the parties, by the nature of the contract itself, or by the circumstances under which the contract was executed.

"Specific performance of a contract for the sale of real property will ordinarily be decreed, even though the purchase money was not paid or tendered at the exact time fixed by the contract, when the party seeking the performance has acted in good faith, and with *reasonable diligence,* unless there has been such a change in circumstances affecting the equities of the parties or the justice of the contract as to make it inequitable that it should be enforced." (Emphasis added; citations omitted.)

Although our conclusion that the agreement here is not a contract precludes consideration of the Heinzels' entitlement to specific performance, we question whether the Court of Appeals correctly read *Wright. Wright* focused on the conduct of the party seeking performance. "Good faith" and "reasonable diligence" encompass more than just the time of tendering performance. They also encompass the surrounding circumstances and the parties' notice of and awareness of those circumstances. The Court of Appeals' "reasonable time" standard appears to lower the threshold for entitlement to specific performance by focusing on time alone rather than upon the reasonable diligence of the party seeking specific performance.

■    The Court of Appeals correctly stated that the essential elements of a contract to sell real property are (1) the parties; (2) the subject matter; (3) the mutual promises; and (4) the price, consideration, and terms of payment (if the sale is not for cash). *Heinzel v. Backstrom, supra,* 98 Or App at 174.

Two facts support the Heinzels' argument that the document they signed obligated them to buy Backstrom's property. First, its caption reads: "Sales agreement between Rodger and Judith Heinzel and Grace Backstrom." That language could support an inference that the document was intended to be an agreement between the parties to sell and to buy the property. However, use of the words "sales agreement" in the caption is not determinative. The meaning of those words must be determined by reading them in the context of the entire document.

Second, the fact that the Heinzels signed the document could support an inference that the Heinzels intended to bind themselves to buy Backstrom's property. On the other hand, the Heinzels' signatures also could be interpreted as being nothing more than their acknowledgment of the terms and conditions of Backstrom's offer. More importantly, the document, which reads: "I Grace Backstrom hereby agree to sell * * *," contains no concomitant unequivocal promise by the Heinzels' to buy Backstrom's property. As the Court of Appeals correctly noted, the document "does not contain express mutual promises. Although Backstrom promised to sell, [the Heinzels] did not expressly promise to buy." 98 Or App at 175.

■    Thus, the document provides support for both the Heinzels' and Backstrom's interpretations. Hence, the document is ambiguous. Given this ambiguity, the fact that Mr. Heinzel, who had previous experience in commercial real estate matters,[8] drafted the agreement becomes legally significant. Any ambiguity in an agreement is resolved against the party who drafted it. *Quillan v. Peloquin,* 237 Or 343, 346-47, 391 P2d 603 (1964).

■    As the drafter of the document, Mr. Heinzel had the opportunity to include language which would have clearly

---

[8] The record supports the findings of both the trial court and the Court of Appeals that Mr. Heinzel was experienced in real estate matters, and we also so find.

shown the parties' intentions. He easily could have included the Heinzels' express promise to buy Backstrom's property, but he did not do so. Application of the rule that any ambiguity in an agreement is to be resolved against the party who drafted it, *Quillan v. Peloquin, supra,* weighs in favor of Backstrom's argument that the document here does not show that the Heinzels intended to bind themselves to buy her property.

On *de novo* review, we find that Backstrom offered to sell her property to the Heinzels on specific terms and conditions.[9] We find further that the Heinzels did not obligate themselves to buy Backstrom's property.

■ The document here specifically provided: "Escrow to be closed on October 1, 1986." We find that to be a condition of Backstrom's offer, and that the offer terminated after that date. Any attempt by the Heinzels to accept Backstrom's offer after October 1, 1986, was a counter-offer because such "acceptance" necessarily would have involved a closing date different from that specifically stated in Backstrom's offer. We conclude that the trial court correctly determined that the equities were with defendants.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[9] Because the Heinzels gave Backstrom no consideration, she was free to withdraw her offer at anytime before it was accepted. *See Aspinwall, Executrix v. Ryan et al,* 190 Or 530, 536-37, 226 P2d 814 (1951) (an offer unsupported by consideration may be withdrawn at any time before it is accepted).