Argued and submitted September 26, 1990, affirmed March 6, 1991

Paula Marie OCHOA,
*Respondent,*

*v.*

Marjorie M. CROSSEN,
*Appellant.*

(88 CV 254; CA A62998)

806 P2d 195

Roger Gould, Coos Bay, argued the cause for appellant. With him on the brief was Joelson, Gould, Wilgers and Dorsey, P.C., Coos Bay.

Thomas C. Howser, Ashland, argued the cause for respondent. With him on the brief was Howser & Munsell, P.C., Ashland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

■     Plaintiff brought an action for specific performance of an agreement to sell real property or, in the alternative, for damages. Defendant's answer included what she designated as a "counterclaim," alleging that plaintiff wrongfully claimed an interest in the property and praying that plaintiff's complaint be dismissed and that the court issue a decree that plaintiff has no interest in the property. The court entered a judgment for specific performance, and defendant appeals.[1] On *de novo* review, we affirm.

In 1978, defendant contracted to purchase an 80-acre piece of property from a third party. Plaintiff expressed interest in buying five of those acres. Defendant agreed, and plaintiff built a house on the property, installed a septic system and a gravity water system and had a road built to the house.

In 1982, difficulties developed between the parties, and defendant became reluctant to sell the parcel. In 1986, plaintiff filed an action to compel defendant to sell the acreage surrounding the house. That action culminated in a stipulated agreement, under which the price of the property was to be set by appraisal. The agreement provided:

"The Defendant shall sell to Plaintiff five acres of the property more particularly described in Plaintiff's complaint herein."

It also called for plaintiff to pay for a survey of the property, one-half of the costs to apply to the purchase price; to apply for permission to partition the property and to use her best efforts to speed the process along; to pay rent of $1,016.86 and her share of the accrued real property taxes; and to be responsible for a *pro rata* share of future property taxes on the property. The agreement specified that, if the land could not be partitioned, plaintiff's action was to be reinstituted. It further said:

"In the event the property can be partitioned and the purchase price is not paid 180 days from the date of approval of

---

[1] Defendant's "counterclaim" amounts to little more than a denial of the issues raised in plaintiff's complaint. Although the judgment does not make specific reference to the "counterclaim," it effectively disposes of it. Consequently, the court's final determination adjudicates all the claims of all of the parties and is a final judgment.

said partition, then the title to said property and improvements shall vest in the Defendant herein."

The land was surveyed for the partition, which resulted in a 3.82-acre parcel to be sold to plaintiff. In January, 1988, an appraiser valued the parcel, apart from improvements, at $12,000. The partition was approved on April 12. In June, defendant objected to the appraisal because, she said, it did not take into account the value of improvements on the property for which she had paid. Plaintiff, who was hoping to close on August 1, had already borrowed $12,000 to pay for the property and put it in escrow at a title company. Defendant did not object to the title company escrow.

Throughout the summer of 1988, defendant tried to increase the purchase price by up to $5,000 to reflect the value of unspecified improvements that she had allegedly paid for. In early August, defendant informed plaintiff that she would not accept $12,000 for the property. The parties agreed to a supplemental appraisal and, when that was not satisfactory to plaintiff, to another appraisal, after which defendant set a final price of $14,714.72. She informed plaintiff of the price on October 3 and asked for a reply by October 7, a Friday. Plaintiff informed defendant on October 5 that she agreed to the price and that the loan would be processed on Monday, October 10. The deadline for payment—180 days after the date of partition—fell on October 9, a Sunday. During the week of October 3, defendant for the first time objected to the use of a title company to close the transaction.

On October 10, plaintiff's lender mailed a check to the title company to cover the purchase. The title company deposited the check in escrow on October 11, and on October 13 plaintiff notified defendant that the money was in escrow ready for closure. On October 18, defendant informed plaintiff that she would not close, because the money had not been deposited with her on October 7. Plaintiff then brought this action.

The court ruled that specific performance was appropriate, because a contract for the sale of real property existed between the parties and time was not of the essence. It also ruled that the October 9 deadline contemplated in the agreement had no special significance and that the only reason the

transaction had not closed before that date was because defendant had made plaintiff's performance impossible.

Defendant asserts that the settlement agreement was an option that expired by its own terms 180 days after approval of partition, because the language of the agreement explicitly binds defendant to sell the property but does not bind plaintiff to buy it. Defendant also asserts that the agreement lacks mutuality, that it is not a contract and that, therefore, plaintiff cannot enforce it by specific performance.

Defendant argues that the dissent in *Heinzel v. Backstrom,* 98 Or App 171, 779 P2d 1037 (1989), supports her position. After the parties filed their briefs here, the Supreme Court reversed our decision. 310 Or 89, 794 P2d 775 (1990). The court held that the real estate "sales agreement" was not a contract, but a mere revocable offer to sell. The seller promised to sell the property, but the buyer did not explicitly promise to purchase it. In the absence of mutual promises, the court looked for other indications of the buyer's intent to be bound but found them only in the document title ("sales agreement") and the buyer's signature on the document. It concluded that the buyer, who had drafted the agreement, did not intend to bind himself. Consequently, the court refused to order specific performance.

■ Although the agreement here lacks explicit language binding the buyer to purchase the property, it contains numerous other indications that plaintiff intended to bind herself. It provides that, should she fail to pay the purchase price, title to the land and the improvements, including the house and improvements that plaintiff had constructed in reliance on defendant's promise, would belong to defendant. Plaintiff's agreement to such a serious consequence of nonperformance is a strong indication of her intent to perform. The agreement also required efforts on plaintiff's part to file and expedite the land partition and to pay for a survey, to pay accrued property taxes, rent and a *pro rata* share of future taxes. Moreover, the parties executed the agreement because plaintiff had brought an action to compel the sale of the land. The court correctly found that plaintiff intended the agreement to bind her and that an enforceable contract existed between the parties.

■ Defendant also argues that the agreement had

expired by its own terms by the time plaintiff tendered payment. We disagree. There is no time of the essence clause in the agreement, and defendant presented no persuasive reason why the court should treat the deadline as a bar to specific performance. Moreover, defendant prevented plaintiff's performance before the 180 days expired. Plaintiff had kept her part of the bargain under the agreement, applying for the partition permission and paying the appraised price into escrow in August. Defendant waited from January until August, 1988, before rejecting the appraisers' price and then required a supplemental appraisal. Defendant did not give plaintiff her final price until October 3, and then with a deadline of October 7 for acceptance. Defendant also made a last-minute objection to closing through a title company.

On the other hand, plaintiff acted in good faith and with reasonable diligence throughout. She promptly accepted defendant's final price. She deposited funds into escrow on October 11 and notified defendant on October 13 that the funds were available. There is no evidence that defendant was prejudiced by the delay. On these facts and in the absence of a time of the essence clause, specific performance was warranted. *See Wright v. Astoria Co.*, 45 Or 224, 77 P 599 (1904).

Affirmed.