DELAY,
dba Scandia Lodge, Ltd.,
*Appellant,*

*v.*

PATEL et al,
*Defendants,*

*and*

RATHE,
dba S-G Mortgage Investors,
*Respondent.*

(A8409-05588; CA A35546)

723 P2d 352

J. William Bennett, Portland, argued the cause and filed the briefs for appellant.

Frank Bosch, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff brought this action to foreclose a trust deed securing his interest as the seller of the Scandia Lodge motel to defendants Patel. Defendant Rathe dba S-G Mortgage Investors is the obligee under an agreement with plaintiff.[1] Plaintiff had executed a mortgage on the motel property, the mortgagee's interest in which was assigned to defendant. Plaintiff appeals from the trial court's judgment awarding defendant damages for breach of the agreement and ordering foreclosure of the mortgage. We affirm in part and reverse in part.

There have been numerous transactions and financing arrangements in connection with the motel. We will confine our factual recitation to the transactions and arrangements that are directly relevant to the issues in this appeal. The motel was built in 1972 by Stan Adkins Building, Inc., which obtained financing for the project from Benj. Franklin Federal Savings & Loan Association (the bank), secured by a mortgage in the bank's favor (the first mortgage). In late 1974, Adkins and plaintiff entered into a long-term contract under which plaintiff would purchase the motel property. Plaintiff assumed the mortgagor's obligation to the bank. In 1975, Adkins sold its interest under the contract with plaintiff to Allied Realty Co. Two years later, as part of an abortive effort to convert the motel units into condominiums, Allied and plaintiff renegotiated their arrangement. Allied conveyed title to the property to plaintiff and, in place of the sale contract, plaintiff executed a promissory note in favor of Allied and a mortgage (the second mortgage), under which he was the mortgagor and Allied the mortgagee. In July, 1981, Allied transferred its interest in the second mortgage to BBH Venture Trust. In connection with that transaction, Allied, plaintiff and BBH entered into the agreement which is the focus of the present dispute. Defendant is the successor to BBH's interests under the second mortgage and under the July, 1981, agreement.

---

[1] The only issues in this appeal involve the controversy between plaintiff and Rathe. That controversy was submitted to a reference judge, ORS 3.300 *et seq,* whose report was entered as the trial court's judgment. The terms "trial court" and "trial judge" in this opinion refer to the reference judge. The term "defendant" refers to Rathe. The trial court certified the judgment as final pursuant to ORCP 67B.

The agreement provides, in pertinent part:

"WHEREAS, Allied desires and is willing to sell, transfer and assign its interest in the second mortgage to BBH for the sum of $37,500 and BBH is willing to pay Allied that amount and assume the position as mortgagee-obligee under the second mortgage if the parties can come to an agreement as to amounts presently due on the first and second mortgages at this time and on August 1, 1984, when the Patels are obliged to pay off their balance to [plaintiff] Scandia.

"It is therefore agreed as follows:

"1.   The balance due on the indebtedness secured by the second mortgage is $373,582.53 as of the 1st day of July 1981 together with interest thereon at the rate of 8 1/2% per annum from said date. This balance is computed in accordance with the terms and provisions for payment set forth in the Adkins-Scandia Contract. The monthly payments of $3,115 shall continue to be made each month by Scandia until August 1, 1984, when the entire balance shall become due and payable.

"2.   The principal balance due on the first mortgage is $294,826.74 as of the 1st day of July 1981 together with interest thereon at the rate of 8 1/4% from said date.

"3.   Scandia agrees to pay to BBH on or before August 1, 1984, a sum equal to the difference between the balance due as computed on Paragraph 1 and the amount due on the first mortgage and upon receipt of that payment BBH will execute and deliver its satisfaction of the second mortgage."

The disagreement comes down to whether the figures to be used in calculating the payment due under paragraph 3 are the balances of the two mortgages as of August, 1984, or the July, 1981, balances defined in paragraphs 1 and 2 of the agreement. The use of the 1984 figures would result in a greater amount due from plaintiff to defendant than would the use of the 1981 balances. The trial court found, *inter alia:*

"1.   The [July 1, 1981, agreement] was not intended to be a negotiation of a new amount due.

"2.   The Agreement of July 1, 1981 was a recognition by the parties thereto of the amounts actually due and owing on the two mortgages as of July 1, 1981. The amount due from plaintiff to defendant * * * as set forth in the Agreement of July 1, 1981 was the difference between the balance due on the first mortgage as of August 1, 1984 and the balance due on the second mortgage as of August 1, 1984."

■ Plaintiff assigns three errors. The first is that the trial court incorrectly found the agreement to be unambiguous as to which measuring dates should be used. Plaintiff argues that there was an ambiguity which the court should have resolved against defendant as the successor to the agreement's drafter, BBH. We do not agree that the trial court found the agreement to be unambiguous. Plaintiff understands the court's comments at the hearing to have meant that no ambiguity existed. We understand the court's statement differently and conclude that it meant that certain evidence was more relevant than other evidence to the resolution of the ambiguity. Moreover, in a subsequent letter opinion to the attorneys, the court expressly stated:

> "I find that the amounts agreed upon in paragraphs 1 and 2, page 3 of the agreement, were not intended to be a negotiation of a new amount due. Rather, they are a mutual recognition of the amounts actually due on the two mortgages as of July 1, 1981. The agreement is unambiguous in this regard.

> "*Paragraph 3 is ambiguous as to the time at which the sum payable is to be computed.* It only makes sense, however, if it is read to refer to the amount due and owing on August 1, 1984, taking into account the July 1, 1981, benchmarks and the payments actually made between then and August 1, 1984. The amount payable on August 1, 1984, is the difference between principal balances due on July 1, 1981, adjusted to reflect the subsequent payments." (Emphasis supplied.)

■ We also disagree with plaintiff's suggestion that it was error *per se* for the trial court not to resolve the ambiguity against the drafter of the agreement. That aid to construction is not an exclusive one; it, along with other principles of construction, serves the overriding rule that the role of courts in construing ambiguous contracts is to ascertain the parties' intent. ORS 42.240; *Totten v. New York Life Ins. Co.,* 298 Or 765, 770-71, 696 P2d 1082 (1985). We conclude that the court did not err in the respects that plaintiff specifies in his first assignment.[2]

---

[2] If—as does not appear to be the case—plaintiff were also asking that we reweigh the evidence *de novo* in this foreclosure proceeding, we would not disagree with the trial judge's findings. We are convinced, as was he, that the parties to the July, 1981, agreement did not intend to renegotiate the amount due from plaintiff to Allied and in turn to BBH. The other findings follow, in the main, from that fact. If there was no intention to renegotiate the obligation, we discern, and plaintiff suggests, no convincing reason why the final payment should be based on figures that do not reflect the contemporaneous status of the obligation.

Plaintiff's second assignment is that the trial court's judgment was inconsistent with certain oral findings and statements which the court expressed at the hearing. If there was an inconsistency, there would nevertheless be no error. *State v. Swain/Goldsmith,* 267 Or 527, 517 P2d 684 (1974).

█    Plaintiff's remaining assignment is that the court erred by ordering foreclosure of the second mortgage. Defendant sought the foreclosure through a "cross complaint." As plaintiff notes, however, no proceedings concerning the foreclosure were conducted at the trial, and "the only issue tried was the amount owed by Plaintiff to Defendant." Defendant answers:

"Defendant's counterclaim requested the foreclosure of his mortgage and the provisions for the foreclosure procedure were included in the Report of the Reference Judge when it became apparent that plaintiff intended to appeal the judgment.

"ORCP 67 C provides:

" 'C.   *Demand for judgment.* Every judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if such relief has not been demanded in the pleadings . . .' "

We cannot agree with defendant that ORCP 67C contemplates a remedy before there has been an adjudication. The foreclosure was improper.

Judgment of foreclosure reversed and remanded; otherwise affirmed.