Argued and submitted September 14, 1999, affirmed May 31, 2000

STATE OF OREGON,
by and through its
Department of Transportation,
*Respondent,*

*v.*

Delta Inn, Inc.,
an Oregon corporation,
*Appellant,*

*and*

FIRST INTERSTATE BANK OF OREGON, N.A.,
a national banking association,
and Korea Exchange Bank,
a Washington state chartered banking corporation,
*Defendants.*

(C950437CV; CA A100459)

3 P3d 180

Charles F. Hudson argued the cause for appellant. With him on the briefs was Lane Powell Spears Lubersky LLP.

Mary H. Williams, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Janet A. Metcalf, Assistant Attorney General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

This case arises from a condemnation proceeding in which plaintiff, the Oregon Department of Transportation (ODOT), exercised its power of eminent domain to acquire interests in real property from defendant, Delta Inn, Inc. (Delta), in connection with improvement of a highway interchange in Wilsonville. Delta appeals from the trial court's determination that ODOT was entitled to costs and disbursements under ORS 35.346 (1995) on the basis that ODOT made a written settlement offer that exceeded the amount of just compensation assessed by the jury's verdict. Delta argues that it—not ODOT—is entitled to costs and disbursements under ORS 35.346 (1995) because the state's settlement offer for an amount in excess of the jury's verdict was *not* exclusively for the property being condemned. ODOT responds, *inter alia*, that the trial court did not err in awarding it costs because its settlement offer for an amount in excess of the jury's verdict *was* an offer within the meaning of ORS 35.346(2) (1995). We agree with ODOT and, accordingly, affirm.

The following facts are undisputed. In 1995, Delta was the owner of the Wilsonville Holiday Inn, which was located immediately west of Interstate 5 (I-5) and immediately south of the Stafford Road interchange in Wilsonville. At that time, the hotel was visible from the I-5 interchange, and the main entrance to the property was on Boones Ferry Road, a state highway that, at that location, was a frontage road running between I-5 and the Holiday Inn. Southbound travelers on I-5 could easily reach the hotel by exiting I-5 onto Elligsen Road, turning left on Boones Ferry Road, and then immediately turning right into the Holiday Inn parking lot.

In 1995, ODOT announced its plans to improve the Stafford Road interchange near the Holiday Inn. The improvement plan involved major changes on both sides of I-5, including converting Boones Ferry Road in front of the Holiday Inn into an on-ramp to I-5, and, consequently, closing the existing access between the Holiday Inn and Boones Ferry Road. The plan also included widening 95th Avenue on the west side of the Holiday Inn property. The Oregon Transportation Commission informed Delta that, in order to

accomplish the planned project, it needed to acquire a strip of land on the west side of Delta's property, four permanent easements across Delta's remaining property, and "all abutter's rights of access between Boones Ferry Road and [Delta's] remaining real property." In a letter dated March 23, 1995, the Oregon Transportation Commission offered Delta $37,500 in exchange for conveyance of those property interests. Delta rejected that offer.

On April 27, 1995, ODOT filed a complaint alleging that it was exercising its right of eminent domain to acquire title in fee simple to a 4,070 square foot strip of land along the western portion of Delta's property, four permanent easements across Delta's remaining property, and "all abutter's rights of access between Boones Ferry Road and [Delta's] remaining real property." The complaint alleged that the total value of Delta's property, including the access rights and easements, was $26,100. Delta answered, specifically denying that "the true value of the acquisition being appropriated by [ODOT] and the damages resulting is the sum of $26,100."

Thereafter, both parties filed pretrial motions relating specifically to whether ODOT was, in fact, condemning and acquiring Delta's access rights on Boones Ferry Road. First, in May 1996, Delta filed a request for admissions, asking ODOT to admit, *inter alia*, that it was "in fact, condemning and acquiring all of [Delta's] abutter's rights of access to and from Boones Ferry Road." ODOT responded: "[ODOT] admits that it is acquiring all abutter's rights of access, if any, between defendant's remaining real property and the to-be-improved portion of Boones Ferry Road." Just one month after making that admission, ODOT filed an amended complaint that was identical to the first, except that it deleted any reference to ODOT's taking Delta's abutter's rights of access. Then, in early October 1996, ODOT filed a motion to withdraw its admission that it was acquiring Delta's access rights. ODOT asserted that

"counsel realized that [ODOT]'s [original] complaint and admission mischaracterized [ODOT]'s actions. [ODOT] was not acquiring [Delta]'s access to Boones Ferry Road. That is to say, [ODOT] was not appropriating [Delta]'s access for use by the general public. [ODOT] was, instead, closing the portion of Boones Ferry Road adjacent to [Delta]'s property

as an exercise of its police power as part of a rebuild of the Stafford Road-Interstate 5 Interchange."

A hearing on ODOT's motion to withdraw its admission was scheduled for October 21, 1996.

While ODOT's motion to withdraw its admission was pending, it made the two written settlement offers which are at the heart of this dispute. The body of the first letter, which was faxed to Delta on Friday, October 11, 1996, stated:

"In the hopes of compromising and settling the above referenced matter without litigation, I hereby offer you the sum of $100,000, as settlement for the above referenced case. A total of $37,500 has already been deposited with the court. Our offer to settle the above referenced case is $62,500, plus interest, over and above the amount deposited on May 1, 1995.

"This offer is being made pursuant to ORS 35.346(2)(a)."

The following Monday, ODOT faxed Delta a second letter dated October 14, 1996, which stated:

"In the hopes of compromising and settling the above referenced matter without litigation, I hereby offer you the sum of $200,000, *as full and final settlement of any and all claims of compensation related to land acquired, access implicated, or related damages*. A total of $37,500 has already been deposited with the court. Our offer to settle the above referenced case is $162,500, plus interest, over and above the amount deposited on May 1, 1995." (Emphasis added.)

Delta did not accept any offer of settlement.

On October 21, over Delta's objections, the trial court allowed ODOT to withdraw its earlier admission and file an amended response denying that it was taking Delta's access rights. In order to avoid prejudice to Delta from ODOT's changed position on access rights, the court also continued the trial. The following day Delta filed an inverse condemnation counterclaim against ODOT seeking just compensation for ODOT's alleged taking of Delta's "abutter's rights of access" to Boones Ferry Road.

After several additional pretrial motions, the case went to trial. The jury ultimately returned the following answer to special verdict interrogatories:

"1. What is the value, as of April 27, 1995, of the property actually taken in this case, whether in fee or by permanent easement, including the value of any improvements taken, and the value, if any, of the access taken?

"ANSWER: $47,015

"2. What is the amount of net damages to the remaining property (gross damages minus special benefits)?

"ANSWER: $ -0-"

The verdict form does not indicate how much of the award, if any, was compensation for Delta's inverse condemnation claim for loss of access.

ODOT submitted a proposed judgment and a statement of costs and disbursements asserting that it was entitled to costs pursuant to ORS 35.346(3) (1995). That statute provided, in relevant part:

"(2) If a trial is held for the fixing of the amount of compensation to be awarded to the defendant owner or party having an interest in the property being condemned, *the court shall award said defendant costs and disbursements including reasonable attorney fees and reasonable expenses * * * in the following cases*, and no other:

"(a) *If the amount of just compensation assessed by the verdict in the trial exceeds the highest written offer in settlement submitted by condemner to those defendants appearing in the action at least 30 days prior to commencement of said trial;*

"* * * * *

"(3) Costs and disbursements other than reasonable attorney fees and expenses * * * shall be awarded to condemner in all cases other than those in which defendant is entitled to costs and disbursements under subsection (2) of this section." ORS 35.346 (1995) (emphasis added).

ODOT asserted that it was entitled to costs and disbursements pursuant to ORS 35.346(3) (1995) because this

was a case in which Delta was *not* entitled to costs and disbursements under subsection (2) of the statute. According to ODOT, Delta was not entitled to costs and disbursements because the jury verdict ($47,015) did not exceed either the state's $100,000 or $200,000 settlement offers. Delta objected, contending that it *was* entitled to costs and disbursements under ORS 35.346(2) (1995), because neither the $100,000 nor $200,000 offers qualified as an "offer" for purposes of that statute.

■ At a hearing considering Delta's objections to ODOT's proposed final judgment and cost bill, the trial court observed:

"[I]n any normal understanding of the word, the State clearly won the case.

"* * * * *

"The more interesting and difficult issue is, of course, whether or not the statute requires or authorizes—I think it's requires—attorney fees or does not under the circumstances here.

"[A]s I was thinking about this off and on over the last few days, I — in fact I'll read you my note to myself: 'The total value of the taking was not affected by separating out the access. It's a nonissue.'

"As I view the trial * * * [i]t's not about whether you're taking the access or not taking the access. It's about whether closing the access diminishes the value of the property. And that's the issue, whether you call it a taking of the access or you just call it a closing of the access. * * * I think it's all part of the State's original taking.

"So, I'm going to find that the $200,000 offer and the $100,000 offer exceeded the jury verdict; and, hence, I'm going to award costs to the State and no attorney fees to [Delta]."

The court then entered a final judgment, which stated that "the amount of the verdict of the jury was less than plaintiff's tender made in writing more than 30 days prior to trial, and * * * plaintiff therefore is entitled to its costs and disbursements incurred herein." Delta appeals from that judgment, assigning error only to the trial court's designation of ODOT

as the prevailing party pursuant to ORS 35.346(3) (1995). Thus, in the most practical sense, the only issue in this case is which party is entitled to costs and fees. We review the trial court's determination in that regard for legal error. *Bennett v. Minson*, 309 Or 309, 787 P2d 481 (1990).

On appeal, both parties make the same arguments that they made to the trial court. Reduced to its essentials, Delta's argument is that the trial court erred because (1) only settlement offers made *exclusively* for the property being condemned are properly compared to the jury's verdict for purposes of an attorney fee award determination pursuant to ORS 35.346(2) (1995); (2) ODOT's $200,000 settlement offer superseded its earlier $100,000 offer; and (3) the $200,000 offer was not exclusively for the property being condemned because it specifically referred to access rights that were not a part of ODOT's condemnation claim at the time of the offer. Thus, Delta argues, ODOT made no settlement offer greater than the jury's verdict for purposes of ORS 35.346 (1995), and therefore Delta, not ODOT, was entitled to costs and disbursements.

ODOT counters with two alternative arguments. *First*, ODOT's $100,000 offer pertained solely to the condemnation claim without reference to loss of access rights and thus, was not revoked by the subsequent $200,000 offer which, more broadly, encompassed the access rights as well. Consequently, the $100,000 offer and the $200,000 offer existed concurrently and, even accepting Delta's definition of "offer" for purposes of ORS 35.346 (1995), the former easily exceeded the jury's $47,015 verdict. *Second*, ODOT argues that, even assuming that its second offer did supersede the first, the $200,000 offer was an "offer" within the meaning of ORS 35.346(2) (1995) because the access rights referred to in the offer were an inherent part of ODOT's condemnation claim.

As amplified below, we agree with ODOT's first argument. That is, even assuming that Delta's definition of "offer" for purposes of ORS 35.346(2) (1995) is correct,[1] ODOT's $100,000 offer satisfies that definition, and that offer

---

[1] We imply no view as to the correctness of Delta's view in that regard.

was not revoked by the $200,000 offer. Because the jury's $47,015 verdict was less than the $100,000 offer, ODOT, and not Delta, was entitled to recover its costs and disbursements.

We begin our analysis by examining the nature of ODOT's $100,000 settlement offer. As recounted above, ODOT offered Delta "the sum of $100,000 as settlement for the above-referenced case" in a letter dated October 11. At the time that ODOT made that offer, it had already amended its complaint to delete the allegation that it was taking Delta's "abutter's rights of access to and from Boones Ferry Road," but its motion to withdraw its admission that it was acquiring Delta's access rights was still pending. Delta had not yet filed its counterclaim against ODOT for inverse condemnation of its access rights.

Delta's argument that the $100,000 offer was revoked by the $200,000 offer depends on the premise that the two offers covered the same subject matter, *viz.*, settlement of the condemnation claim *and* any claim regarding access rights. In particular, Delta emphasizes that both the $100,000 and the $200,000 offer letters refer to "settling *the above referenced matter*" and "our offer to settle *this* case." (Emphasis added.) Delta further points to language in the second settlement offer—that it was an offer to settle "*any and all claims of compensation related to land acquired, access implicated, or related damages*"—and contends that, from that language, it "reasonably understood the second letter to be an amendment and clarification of the first." Relying on general principles of contract formation, Delta argues that ODOT terminated its power to accept the $100,000 offer by making a new offer involving the same subject matter. *See* Arthur Corbin, 1 *Corbin on Contracts* § 2.20 (rev ed 1993) ("The making of an alteration in the terms of an offer, or the making of a new offer *involving the same subject matter*, communicated to the offeree, will end the power to accept the original offer, without using any express words of revocation.") (emphasis added).

ODOT's response is two-fold. First, ODOT asserts that the text and timing of the two offers make it clear that the $100,000 and $200,000 offers did not "involve the same

subject matter." As support for this position, ODOT points to the fact that its second letter explicitly offered to settle "any and all claims of compensation related to land acquired, *access implicated*, or related damages," while the first letter made no mention of Delta's loss of access claim. (Emphasis added.) ODOT also highlights that its first offer specifically stated that it was "being made pursuant to ORS 35.346," while the second offer did not. Thus, ODOT argues, the first letter was an offer to settle its condemnation claim and the second letter was an offer to settle *both* its condemnation claim *and* any claim Delta might have for loss of access. In ODOT's view, both offers remained on the table and Delta was free to accept either offer. Given that the two letters offered to settle different subject matter, ODOT concludes, the second offer did not revoke the first. As explained below, we agree with ODOT, albeit for slightly different reasons.

 "Settlement agreements are contracts and, as such, they implicate general principles of contract law." *Pollock v. Tri-Met, Inc.*, 144 Or App 431, 435, 927 P2d 117 (1996). In interpreting a contractual provision, including an offer, we attempt to discern the meaning of the terms of an offer by examining the text of the offer and the circumstances of the parties at the time the offer was made. *See Yogman v. Parrot*, 325 Or 358, 361-62, 937 P2d 1019 (1997); *Klimek v. Perisich*, 231 Or 71, 371 P2d 956 (1962) ("The intention of the parties to enter into a contract and the construction of their language to express their intentions and agreement must be construed in the light of the circumstances which then existed."). If the terms of the offer can reasonably, in context, be given more than one meaning, we resort to the maxim of construing the ambiguity against the drafter. *Heinzel v. Backstrom*, 310 Or 89, 96, 794 P2d 775 (1990); *Quality Contractors, Inc. v. Jacobsen*, 139 Or App 366, 371, 911 P2d 1268, *rev den* 323 Or 691 (1996). That maxim "serves the overriding rule that the role of courts in construing ambiguous contracts is to ascertain the parties' intent." *Delay v. Patel*, 80 Or App 620, 624, 723 P2d 352, *rev den* 302 Or 299 (1986). Our determination of which of the possible constructions is "against" the drafter turns on which construction would be less favorable to the drafter in terms of *enforcement* of the substance of the agreement. Put another way, we give the ambiguous term the

meaning that, in enforcement of the agreement, would favor the interests of the nondrafter.

■ Applying those principles here, we first examine the text and context of ODOT's $100,000 settlement offer. The text of the letter offers to settle "the above-referenced case" for $100,000, referring to ODOT's condemnation claim against Delta. As noted, at the time ODOT made the offer, it had filed an amended complaint that did not allege a taking of Delta's access rights. However, its admission that it was acquiring Delta's access rights had not yet been withdrawn. Thus, it was unclear whether ODOT's condemnation claim against Delta included condemnation of Delta's access rights. Given those circumstances, we conclude that the terms of ODOT's offer, read in context, could reasonably be understood in either of two ways: (1) as an offer to settle only the condemnation claim as alleged in ODOT's amended complaint, *i.e.*, not including condemnation of Delta's access rights, or (2) as an offer to settle the case, which included condemnation of Delta's access rights because ODOT's motion to withdraw its admission had not yet been granted. *See* ORCP 45 D ("Any matter admitted pursuant to this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.").

In resolving that ambiguity, we resort, necessarily, to the "construe against the drafter" principle. *Quality Contractors, Inc.*, 139 Or App at 371. As noted, that principle is viewed, and applied, from the perspective of enforcement of the substance of the ambiguous contract. That is, if ODOT's $100,000 offer had been enforced as a binding settlement against ODOT, which of the two interpretations would have been less favorable to ODOT—or, conversely, more favorable to Delta: Did the settlement cover one claim or two claims? So understood, the answer is obvious: It would be more favorable to Delta if the offer pertained to the condemnation claim only. That way Delta would receive $100,000 and still retain its ability to prosecute its claims for the value of lost access. We thus conclude that ODOT's $100,000 settlement offer did not encompass settlement of Delta's potential claims against it for loss of access.

Our conclusion in that regard defeats Delta's argument that the $200,000 offer revoked the $100,000 offer because both involved the same subject matter. Here, the text of ODOT's $200,000 offer explicitly stated that it was an offer to settle "any and all claims of compensation related to land acquired, *access implicated*, or related damages." (Emphasis added.) Thus, the $200,000 offer did not revoke or supersede the $100,000 offer. Rather, the two, one narrower and the other more inclusive, existed concurrently. Delta had the choice of accepting either.

As noted, so construed, the $100,000 offer was an "offer" even within Delta's restrictive view of ORS 35.346(2) (1995). *See* 168 Or App at 57 n 1. Consequently, the jury's verdict ($47,015) did not exceed the $100,000 "written offer in settlement submitted by [ODOT] to those defendants appearing in the action at least 30 days prior to commencement of said trial." ORS 35.346(2) (1995). The trial court did not err in awarding costs and disbursements to ODOT under ORS 35.346(3) (1995).

Affirmed.